Kraeft vs. Mayer and others.

KRAEFT, Respondent, vs. MAYER and others, Appellants.

*January 10 — January 28, 1896.*

*Injury to stevedore unloading vessel: Open scuttle: Negligence: Assump-
tion of risk.*

1. In an action for an injury sustained by a stevedore by stepping into
an open scuttle or trimming hole in the lower deck of defendants'
barge, it appeared that plaintiff was an employee of a boss steve-
dore who was unloading the barge under a contract with the con-
signees of the cargo; that the barge was loaded partly in the hold
and partly on the between deck with a cargo of stove-size coal,
which would run; that in loading such a cargo the scuttles and
trimming holes are opened to aid in equalizing it as it is run in
upon the lower deck, and that it is customary to leave them open
when the vessel is turned over to stevedores for unloading; that
the hatches in the upper deck were open when the unloading was
begun, but that the one nearest the scuttle in question had after-
wards been closed, so that that part of the lower deck was dark; and
that the stevedores had the right to have the hatches and scuttles
opened or closed by the crew upon request. There was no evi-
dence of any failure to comply with any such request. *Held*, that
defendants were not guilty of negligence either in leaving the
hatch in the upper deck closed or in leaving the scuttle in ques-
tion open.

2. Plaintiff was an experienced stevedore and acquainted with defend-
ants' barge. He knew that some of the scuttles were open and
that others might be, also that the upper hatch had been closed so
that it was dark on the lower deck, but made no request or com-
plaint in respect thereto. At the time of the injury he had gone
down to the lower deck by a hatch at some distance from the one
at which he was working, and had started to walk back to the
latter without waiting to accustom his eyes to the darkness.
*Held*, that he assumed the risk of any danger resulting from the
hatch being closed, and that in proceeding as he did he was guilty
of contributory negligence.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

The plaintiff brought this action to recover against the defendants damages sustained by him for an injury received while working as a stevedore in unloading the steam barge Helena, of which the defendants are the owners, at a wharf in the city of Milwaukee, and which was laden with a cargo of stove-size coal, and was being discharged of its cargo by a boss stevedore and his assistants, pursuant to a contract with the consignees of the cargo. It is charged that it was the duty of the defendants to leave the barge in a condition to be safe and secure for the plaintiff to work upon; that the defendants were careless and negligent, in that they left the scuttle or trimming hole open on the lower deck at a time and place when and where the plaintiff, in the discharge of his duty, was necessarily required to pass, and that while doing so he stepped into said scuttle hole and broke his leg. And it was also charged that the hatch in the upper deck nearest the scuttle, and through which light might have given warning to persons on the lower deck that said scuttle was open, was closed, so that no light could come from said hatch to enable the plaintiff to discover the danger from the scuttle or trimming hole being open. The scuttle or trimming hole was an opening in the lower deck about ten inches wide and twenty inches long, and at the time was entirely unguarded; and it was claimed that it was the duty of the defendants to have the said scuttle hole closed before allowing the men unloading the said coal to use the said deck for the purpose of going to and from their work.

There was a general denial of the principal allegations of the plaintiff's complaint, and it was alleged that the plaintiff's injury was occasioned solely through his negligence, carelessness, and improper conduct.

At the close of the plaintiff's testimony the defendants moved the court for a nonsuit, but it was denied, and at the

close of the case the defendants moved the court to direct a verdict in their favor. This motion was denied.

A special verdict was found, to the effect: (1) That the barge, at the time of the plaintiff's injury, was being discharged of her cargo by a stevedore and his men, under a contract with the consignees of the cargo. (2) The cargo was laden in the hold in part, and on the between deck in part. (3) That part of the lower deck where the plaintiff received his injury was not laden with coal so as to prevent its use as a way for passing and repassing, (4) but was apparently in a condition fit and proper for its use by a man of ordinary care, in passing forward and aft. (5) The scuttles or trimming holes in that part of the lower deck were open. (6) It was negligence on the part of the defendants, their officers and employees, to leave such scuttles or trimming holes so open. (7) Such negligence was the proximate cause of the plaintiff's injury. (8) While the barge was being discharged of her cargo by the stevedore and his men, the opening and closing of the hatches were not under their control and direction. (9) The hatches in the upper deck, above the place where the plaintiff was injured, were not closed at the request of the stevedore's men. (10) Hatches Nos. 1 and 5 were being worked at the time of the plaintiff's injury. (11) There was no stationary ladder leading from the lower to the upper deck at the place where the plaintiff worked. (12) There was a ladder on board said vessel, which the plaintiff could have had for the asking, to go down the hatch in which he worked. (13) The dangers and risks of the plaintiff by reason of the uncovered scuttle or trimming hole where he was injured were not such as would be apparent to a person using ordinary care and observation and having the knowledge and experience in and about steam barges in general, and the steam barge Helena in particular, which the plaintiff then had. (14) The plaintiff was not guilty of any negligence or want of ordi-

nary care which proximately caused or contributed to his injury. (15) It was customary, upon the Helena and vessels of her class, to leave the scuttles or trimming holes open when the vessels were turned over to the stevedores for unloading. (16) It was the duty of the officers and men employed in the vessel to close such scuttles or trimming holes. (17) The defendants were guilty of negligence which proximately caused the plaintiff's injury, in leaving open the scuttle or trimming hole into which the plaintiff stepped or fell when he received his injury. (18) The plaintiff was not guilty of any want of ordinary care, which proximately caused or contributed to his injury, in stepping or falling into said scuttle or trimming hole. (19) The plaintiff's damages were assessed at the sum of $3,779.16.

For said amount, with costs, judgment was given against the defendants, from which they appeal.

For the appellants there was a brief by *Van Dyke & Van Dyke & Carter*, and oral argument by *Geo. D. Van Dyke.* To the point that a vessel owner owes no duty to a stevedore to protect him from the danger of stepping into an open scuttle, left open for his convenience, which is a usual or ordinary risk incident to the business as it is conducted and which every experienced stevedore knows or is presumed to know, and over which the owner has no dominion while the vessel is discharging her cargo, they cited *Indermaur v. Dames*, L. R. 1 C. P. 274; *S. C.* 2 id. 311; *Wilkinson v. Fairrie*, 1 Hurl. & C. 633; 1 Thomp. Neg. 309, subd. 3; *Canniff v. Blanchard N. Co.* 66 Mich. 646, 648; *Germania*, 9 Ben. 356; *Dwyer v. Nat. S. S. Co.* 4 Fed. Rep. 493; *The Carl*, 18 id. 655; *The Gladiolus*, 21 id. 417. The defendants did not have *control* of the opening of the hatches or of closing the scuttles, within the meaning of the rule as to inviting persons in to dangerous places, and hence owed no duty to the plaintiff in respect thereto. If the owner of a building, vessel, or other structure, properly constructed and

in proper repair, turns it over to tenants, contractors, or workmen, and for their convenience opens hatches, scuttles, windows, doors, or stairways and leaves them open, to be closed by the tenants, contractors, or workmen at their pleasure or at their bidding, the owner is not answerable to them or their visitors for the manner in which such tenants, contractors, or workmen exercise their control over them. Buswell, Personal Injuries, §§ 85, 90; 1 Thomp. Neg. 319, subd. 2; Shearm. & Redf. Neg. §§ 708, 723; *Cole v. McKey,* 66 Wis. 500, 510; *Peake v. Buell,* 90 id. 508; *Hadley v. Taylor,* L. R. 1 C. P. 53; *Fisher v. Thirkell,* 21 Mich. 1; *Mellen v. Morrill,* 126 Mass. 545; *Boston v. Gray,* 144 id. 53.

For the respondent there was a brief by *Fiebing & Killilea,* attorneys, and *N. S. Murphey,* of counsel, and oral argument by *H. J. Killilea.*

PINNEY, J. It appeared from admitted facts and from uncontradicted evidence that at the time of the plaintiff's injury, November 3, 1891, the barge Helena, owned by the defendants, was laden with a cargo of about 2,200 tons of stove-size hard coal, partly in her hold and partly between decks, consigned to Hadfield & Co. under a bill of lading which required them to discharge the same, and was lying at their dock, and they had made a contract with a boss stevedore, Carroll, to discharge the cargo. Carroll and his men commenced the work in the morning, working one hatch forward and one hatch about midship, and he had hired the plaintiff, who was assisting at the latter hatch. The plaintiff was a stevedore of twenty-one years' experience, and had unloaded the Helena, when laden with coal, ten times on previous occasions, and was familiar with the use and functions of trimming holes in loading and unloading, and with the structure of the barge in that respect. The depth of hold of the barge, from her upper deck, was

over twenty-two feet, and the distance between decks about eight feet in the lowest part. There were eight hatches in the upper deck, and eight in the lower deck directly under them. These hatches extend crosswise of the barge; those in the upper deck being thirty feet long, and those in the lower deck twenty feet long, and all of them eight feet wide and, on each deck, sixteen feet apart. Through these hatches the cargo is taken in and discharged. There are also scuttle or trimming holes or hatches in the lower deck, ten inches wide and two feet long. Those called "wing scuttles," about three or four feet from the side, are midway between the larger hatches.

Scuttle holes or trimming hatches, such as the one into which the plaintiff stepped and broke his leg, are common to all double-decked steam barges; and one of their purposes is to facilitate the distribution of the cargo and trim the vessel in loading, and to aid in unloading the cargo when it consists of coal, grain, or any cargo that will run. When loaded with a cargo of that character both in her hold and between decks, it is run in by spouts or chutes through the upper hatches; and the scuttle holes or trimming hatches in the lower deck aid in equalizing the cargo, and are therefore left open when the loading begins, and necessarily so when it is ended. In discharging the cargo, the stevedores begin at one or more of the hatches on the upper deck, and shovel into tubs or buckets, which are hoisted out by means of a steam hoist, and deposited at the proper place on the dock; the stevedores working from the opening of the hatches on the top until they reach the bottom of the vessel; the freight from between decks running, in a great degree, through the scuttles or trimming holes, and towards the hatches below, so that a great amount of shoveling is saved, both in loading and unloading. If a full cargo is to be carried, they level the cargo in the hold by shoveling it through the trimming holes as it comes upon the lower deck, and then the vessel

is filled between decks.  If a partial cargo is put aboard, it is run through spouts or chutes into the upper hatches, until they are filled up; and with the aid of the scuttles or trimming holes the cargo trims itself, to a certain extent, by running through them.  In either event, if any such cargo is taken on between decks, these scuttle or trimming holes fill up, and are then left unclosed.

In the present instance the cargo had not been trimmed by shoveling, but had been run into the vessel through the upper hatches, and left to trim itself through these holes; and there was 1,600 to 1,800 tons of coal in the hold, and 300 or 400 tons on the lower deck, principally amidship, extending from about hatch 2 aft to hatch 6.  One of the plaintiff's witnesses, who worked with him, testified: "When we started to work the hatch was full of coal.  The middle and between deck was full all around.  Between this hatch and the forward hatch, it was also rounded full.  I mean it was halfways between decks."  The plaintiff began work at 9 A. M. in the midship hatch, and, when returning from dinner that day, went down a ladder in a forward hatch, and while walking aft on the lower deck, towards the hatch where he had been at work, stepped into a scuttle or trimming hole of the size already described, which he testified he had not noticed, between eight and twelve feet from the hatch where he worked, and pretty nearly full from below.  The hatch in the upper deck next forward to the one in which he worked was closed at the time.  At noon they had gone down in the midship hatch about six feet into the hold, and there still remained coal on the lower deck, but how much does not clearly appear.  When the vessel was put alongside the dock, and the stevedores began unloading her, all the upper hatches were open.  The plaintiff testified: "The trimming holes that were around the hatches where I was at work were all open.  They were not covered.  The hatches were all open.  It was light.  I saw they were not

covered, of course. I knew the coal in the hatch was stove size, and it was the same between decks as in the hold, so far as I went down at noon time. . . . The reason I did not go down my hatch was because there was no ladder in it." · It was found that he could have had a ladder by asking for it. He testified that it was dark where he stepped in the hole, and he did not see it.

The evidence was that while a vessel was being unloaded the stevedores had a right to require that any of the hatches should be opened or closed upon their request; that the officers or crew opened or closed them accordingly, and, if a request to that effect was not attended to, it was enforced by the threat of a strike or the leaving of the vessel by the stevedores; that practically what should or should not be done in these respects, while the vessel was unloading, was under the direction and control of the stevedores. And this was not denied by the plaintiff or any of his witnesses, though they testified that "the sailors go and take off and put on those little covers on the between decks;" but there was no testimony tending to show that it was the duty of the officers or crew to do so, until requested. It seems clear, from all the evidence, that the officers and crew, being on the upper deck, would not, in the ordinary course of proceedings, have notice of the necessity of either opening or closing hatches or trimming holes until request made by the stevedores. As to the opening or closing of the main hatches, the evidence was undisputed that how many were opened and how many were closed depended upon the necessity of protecting the stevedores from sun or rain or cold winds, and they had their own way about it, and had substantial control of the portion of the vessel containing the cargo. The main upper hatches were all opened when the vessel was put alongside the dock, and there was evidence showing that upon the request of some of the stevedores the hatch next forward of the

Kraeft vs. Mayer and others.

one where the plaintiff worked, and near where he was injured, was closed in the course of the forenoon, but several of the stevedores testified that they did not make or hear any such request. There was no evidence tending to show that there was any complaint made of its being closed, or that any request was made of the officers or crew to open or close any of the scuttle or trimming holes in the lower deck, or that any request that they had made had not been properly complied with. It was in evidence that the covers to the scuttle or trimming holes were usually on a beam over or near such holes, and that frequently stevedores closed them of their own accord; and sometimes the hatch boy, who signaled the hoist, and was in the employ of the consignees, attended to it, and at other times the boss stevedore would direct his men to do it.

Starting with the admitted fact that the vessel was laden in the hold in part, and on the between deck in part, and the cargo being all of one kind and that would run, it seems plain, in view of the facts referred to, that there was no evidence to go to the jury to show that the defendants were guilty of any negligence that was the proximate cause of the plaintiff's injury, and that the injury of the plaintiff was the result of his own negligence and that of his fellow stevedores. The general rule was stated by the court to the jury, that if a man comes upon the premises of another, not as an employee of the owner, having no special business with the owner, nevertheless, if the place be one to which ordinarily the public are invited, or to which any particular portion of the public to which the person in question belongs are invited, or are expected to come for the benefit in whole or in part of the owner of the premises, then such person is said to come there by invitation, and he has a right to have the place reasonably safe, the same as employees, and that, as a matter of law, in view of the facts, the plaintiff was on the vessel "by invitation, for a purpose which was for the benefit

of himself, the consignees, and the owners of the vessel,
alike." The fact that the plaintiff thus entered the barge,
and that he belonged to one of the classes who are entitled
to ordinary care for their safety on the part of the owners
of the vessel, in view of the facts, did not fully or properly
meet the relations existing between the parties, and the con-
ditions existing at the time the injury occurred. The plaint-
iff's injury was not the result of any defect or insufficiency
in the structure of the barge, or of any want of repair which
might operate as a trap or pitfall, but was the result of
what occurred through the action of the plaintiff and his
fellow stevedores in relation to matters over which he and
they exercised and had full control, with which they were
familiar, and they must have reasonably anticipated this
effect. There is no evidence tending to show that it was
the duty of the officers or crew to watch the operations of
the stevedores, or take cognizance of their progress or the
condition of their work. With that the defendants had
nothing to do. They were under no special duty, except to
respond to such requests as to opening and closing hatches
and trimming holes as the stevedores should make, and
which they were accustomed to enforce in a summary and
effective manner, and no breach of duty growing out of ex-
isting relations would occur in this respect until after such
notice or request. The duty arising by law from implied
invitation had been fully met, for it was found that "it was
customary, upon the Helena and vessels of her class, to leave
the scuttles or trimming holes open when the vessel was
turned over to the stevedores for unloading." We think,
therefore, that as in the present case there was no evidence
tending to show that there was any request made by the
plaintiff or his associates in reference to the closing or open-
ing of the hatches or trimming holes, or that any request was
made to the officers and crew which was not promptly com-
plied with, there was no evidence of any negligence on the

part of the defendants which could be considered as the proximate cause of the plaintiff's injury, and we think that sufficient grounds appear for imputing the plaintiff's injury to his own negligence.

In respect to the negligence of the plaintiff, in addition to what has already been said bearing on that point, it is plain that, with his experience and knowledge of existing conditions and surroundings, it was his duty to take notice of the effect the discharging of the cargo had in opening and freeing the scuttle or trimming holes of coal, and to take reasonable precaution in respect to such changes, but knowing that some of them were open and others might be opened, he made no request or complaint, nor did he take the precaution of further observation. He left the vessel at noon at a hatch forward from the one where he had worked, though he could have had a ladder by asking for it, and returned the same way. He testified that upon reaching the lower deck, although it was quite dark there, he went back at once towards his hatch, without waiting a moment for his eyes to become adjusted and accustomed to the darkened condition of the place. And, in respect to the want of light of which he complains, it appears that the upper hatch above where he worked, thirty feet long and eight feet wide, was open, and it was about midday, and the scuttle or trimming hole into which he stepped was not more than twelve feet distant from such hatch, and about eight feet below it. Besides, it is clear that he knew before noon that the next upper hatch forward had been shut, and the condition of the between deck as to light could not but have been known to him; and he made, so far as appears, no complaint of it. He must be taken to have assumed the risk of any danger arising from the closing of that hatch and the failure to have it opened.

For these reasons the judgment of the circuit court must be reversed, and it is not material to consider the question

presented at the argument, whether the verdict is contradictory and uncertain.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.