# QUEBEC STEAMSHIP CO. *v.* MERCHANT.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 30.   Argued January 24, 1890. — Decided March 3, 1890.

The stewardess of a steam-vessel belonging to a corporation sued it to recover damages for personal injuries sustained by her.  She came out of the cabin, which was on deck, to throw the contents of a pail over the side of the vessel, at a gangway facing the door of the cabin, and leaned over a railing at the gangway, composed of four horizontal rods, which gave way, because not properly secured, and she fell into the water, probably striking the side of a boat.  The rods were movable, to make a gangway, and had been recently opened to take off some baggage of passengers, and not properly replaced.  The porter and the carpenter had attempted to replace them, but left the work, knowing that it was unfinished.  The persons composing the ship's company were divided into three classes of servants, called three departments — the deck department, containing the first and second officers, the purser, the carpenter and the sailors; the engineer's department, containing the engineers, the firemen and the coal-passers; and the steward's department, containing the steward, the waiters, the cooks, the porter and the stewardess.  Every one on board, including the plaintiff, had signed the shipping articles, and she had participated in salvage given to the vessel.  The master was in command of the whole vessel; *Held;* that the porter and the carpenter were fellow-servants with the plaintiff, and that the corporation was not liable to her for any damages.

The Circuit Court left it to the jury to determine, if they found there was negligence, whether the injury was occasioned by the careless act of a servant not employed in the same department with the plaintiff; *Held,* error, and that the court ought to have directed the jury, as requested, to find for the defendant, on the ground that the negligence was that of a fellow-servant, either the porter or the carpenter.

The verdict was for $5000, and the judgment was for that amount, and $306 interest for the time between verdict and judgment, and for $60.25 costs; *Held,* that the matter in dispute exceeded the sum or value of $5000, exclusive of costs, within the act of February 16, 1875, c. 77, § 3, 18 Stat. 316, even though, without the interest included in the judgment, the amount, exclusive of costs, would not be over $5000.

THE case is stated in the opinion.

· *Mr. William Allen Butler* (with whom was *Mr. Wilhelmus Mynderse* on the brief) for the plaintiff in error.

*Mr. A. J. Dittenhoefer* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This was an action to recover damages for personal injuries, brought by Barbara Merchant against the Quebec Steamship Company, a Canadian corporation, in the Superior Court of the city of New York, and removed by the plaintiff into the Circuit Court of the United States for the Southern District of New York. The case was tried by a jury, which found a verdict for the plaintiff for $5000, on which a judgment was entered in her favor for that amount, with $306 interest from the time of rendering the verdict to the time of entering judgment, and $60.25 costs, in all $5366.25.

The plaintiff was the stewardess of the steamship Bermuda, a vessel belonging to the defendant, and one of a line of vessels plying between the city of New York and the West Indies. She had been employed on the vessel for about eighteen months. It was her duty as stewardess to attend to the ladies' rooms in the cabin, and, in the course of that duty, to empty slops, as to which her orders were to throw them over the side of the vessel. The cabin was on deck. A railing extended around the vessel, and consisted of four horizontal iron rods, which were supported, at intervals of about 4½ feet, by stanchions. In this railing there were openings or gangways, for receiving and discharging freight and passengers. Three of the gangways were for passengers. One of them faced one of the doors of the cabin which open on the deck. In order to use these openings or gangways, the four iron rods which formed the railing of the gangway, instead of being fixed immovably to the stanchions, were each of them fastened at one end to a stanchion by a ring or eyelet in which the rod could swing, the other end of each rod being formed into a hook which went into an eye fastened on another stanchion to receive it. This was a proper construction of the railing at the gangway.

On the 28th of December, 1883, the vessel was at anchor from a mile-and-a-half to two miles off the shore of the Island

of Trinidad, one of the islands at which she stopped in her trips. Some passengers from New York were to land at Trinidad, and their baggage was put off through the gangway on the starboard side aft into a boat from the shore. To do this, the four rods composing the railing in the gangway were raised, and the gangway was opened. After the baggage had been discharged, the carpenter and the porter of the vessel undertook, according to the testimony of a witness for the plaintiff, to replace the rods in their proper position. He says that the porter, one West, " was at one stanchion, pushing forward, while the carpenter stood at the other, where the hook fitted into the eye, trying to force it into the eye. It began raining, and the carpenter and West were beginning to get wet." Thereupon the carpenter left the gangway and the porter left it soon afterwards. The rods were not placed in their proper positions, but remained so far unfastened that the hooks were not secured in the eyes. The porter testified, as a witness for the defendant, that he told the carpenter to put the rods in, and that he replied, " Wait until the rain goes over." While the rods were thus unfastened, the plaintiff came out of the cabin door with a pail of slops, to throw its contents over the side of the vessel. She leaned over the railing at the gangway, the rods gave way, and she fell overboard through the opening and was seriously injured. She probably struck the edge of a small boat which was lying there, and thence fell into the water. She had been in the habit of emptying slops at this gangway, but had never noticed the hooks.

The ship's company consisted of thirty-two or thirty-three persons, divided into three classes of servants, called three departments, the deck department, the engineer's department, and the steward's department. The captain, the first and second officers, the purser, the carpenter and the sailors were in the deck department. The engineers, the firemen, and the coal-passers were in the engineer's department. The steward, the waiters, the cooks, the porter, and the stewardess were in the steward's department. Every one on board, including the plaintiff, had signed the shipping articles, and she had partici-

pated in salvage given to the vessel. The master or captain was in command of the whole vessel.

At the close of the evidence, the counsel for the defendant requested the court to direct the jury to find a verdict for the defendant, on the grounds (1) that the injury sustained by the plaintiff was one occasioned, if there was any negligence, by the negligence of a fellow-servant; and (2) that, on the uncontradicted testimony, the plaintiff herself was guilty of contributory negligence, and could not recover. The court refused so to direct the jury, to which refusal the defendant excepted.

We think the court ought to have directed the jury to find a verdict for the defendant, on the ground that the negligence was that of a fellow-servant, either the porter or the carpenter. As the porter was confessedly in the same department with the stewardess, his negligence was that of a fellow-servant. The contention of the plaintiff is that, as the carpenter was in the deck department and the stewardess in the steward's department, those were different departments in such a sense that the carpenter was not a fellow-servant with the stewardess. But we think that, on the evidence, both the porter and the carpenter were fellow-servants with the plaintiff. The carpenter had no authority over the plaintiff, nor had the porter. They and the plaintiff had all signed the shipping articles; and the division into departments was one evidently for the convenience of administration on the vessel, and did not have the effect of causing the porter and the carpenter not to be fellow-servants with the stewardess.

The injuries to the plaintiff were caused solely by the negligence of one or the other of two fellow-servants, who were in a common employment with her; and there was no violation or omission of duty on the part of the employer contributing to such injuries. Neither of her fellow-servants stood in such relation to her or to the work done by her, and in the course of which her injuries were sustained, as to make his negligence the negligence of the employer. The case, therefore, falls within the well-settled rule, as to which it is unnecessary to cite cases, which exempts an employer from liability for injuries to a servant caused by another servant, and does not fall

within any exception to that rule which destroys the exemption of the employer when his own negligence contributes to the injury, or when the other servant occupies such a relation to the injured party, or to his employment, in the course of which his injury was received, as to make the negligence of such servant the negligence of the employer.

The plaintiff took upon herself the natural and ordinary risks incident to the performance of her duty, and among such risks was the negligence of the porter and the carpenter, or of either of them, in the course of the common employment of the three. There was nothing in the employment or service of the carpenter or the porter which made either of them any more the representative of the defendant than the employment and service of the stewardess made her such representative. The court left it as a question for the jury to determine, if they found that negligence existed, whether the injury was occasioned by the careless act of a servant not employed in the same department with the plaintiff. This ruling was excepted to by the defendant, and we think it was erroneous.

The plaintiff takes the point that, as the verdict did not exceed $5000 this court has no jurisdiction, although the judgment was for the amount of the verdict, with interest and costs. The statute in regard to the jurisdiction of this court provides that the matter in dispute must exceed the sum or value of five thousand dollars, exclusive of costs. Act of February 16, 1875, c. 77, § 3, 18 Stat. 316. It is well settled that the test as to the jurisdiction of this court, in a case like the present, is the amount of the judgment below, even though without the interest included in it, the amount, exclusive of costs, would not be over $5000. *N. Y. Elevated Railroad* v. *Fifth Nat. Bank*, 118 U. S. 608.

> *The judgment of the Circuit Court is reversed, and the case is remanded to that court with a direction to award a new trial.*