NELLIE SOFIELD, ADMINISTRATRIX, &c., OF CHARLES SO-FIELD, DECEASED, PLAINTIFF BELOW, DEFENDANT IN ERROR, v. THE GUGGENHEIM SMELTING COMPANY, DEFENDANT BELOW, PLAINTIFF IN ERROR.

Argued March 8, 1900—Decided June 18, 1900.

1. Sofield was engaged as an employe of the defendant company, the Guggenheim Smelting Company, in its copper smelting factory, as a helper at one of the furnaces used in that work. Near to the furnace at which Sofield was engaged, other workmen of the defendant were engaged in taking from another furnace molten copper, and throwing it with ladles into a pit of cold water (this water by this process became extremely hot), some fifteen feet away, on a line seven feet from the furnaces, at right angles, and upon the other side of the passage-way of that width running in front of all the furnaces. The pit when not in use was covered with fit and suitable planking furnished by the defendant, rendering it entirely safe from any person falling into it. This pit was kept covered by the workmen when not in use. When the workmen commenced work it was so covered, and the covering was removed by them for the purpose of throwing the molten copper into the pit, and as the work progressed the planking was partly replaced. During the progress of the work, and in the middle of the night, a recess was taken by the workmen for the purpose of eating a dinner or lunch; they failed to replace the planking over the pit. Sofield engaged at the other furnace was sent upon an errand by the foreman, and in going along this passageway to a door at the end of the factory,

somehow got off the line of the passageway and fell or slipped into the pit and was scalded to death. *Held,* that the failure to replace the planking, if it was an act of negligence, was the negligence of the co-servants of Sofield in the common employment and a risk assumed by him, and that recovery could not be had for the benefit of his next of kin.

2. The defendant had furnished planking adjustable to, and easy to be used to cover this pit and thus render it entirely safe, and it was the duty of the servants of the defendant to use it for that purpose, and their failure to do so was not the negligence of the defendant, but their own negligence in the performance of the work, for which the defendant is not liable to them or their co-servants.

3. The test must always be whether the negligent act or omission was in the discharge of the master's or the servant's duty. If it was in the discharge of the servant's duty the master is not liable to co-servants in the same employment for such negligent act or omission.

---

On error to the Supreme Court. This cause was tried at the Middlesex Circuit at the April Term, 1899, before Mr. Justice Collins and a jury, and a verdict of $3,000 rendered for the plaintiff below.

For the plaintiff in error, *Alan H. & Theodore Strong.*

For the defendant in error, *Cortlandt & Wayne Parker.*

The opinion of the court was delivered by

LIPPINCOTT, J. Charles Sofield, the intestate of the plaintiff below, was, on July 11th, 1898, in the employment of the defendant as one of its workmen, in its smelting furnace and copper factory at Perth Amboy. Just after midnight of that day, at a very early hour in the morning, whilst on his way into the yard of the factory, along a passageway beside a tank or shot-pit containing water which had become heated by molten copper being thrown into it, fell into the same and was scalded. He immediately got out without assistance, but he died in the hospital the same day from the injuries received. The plaintiff recovered judgment against the defendant, in the Supreme Court, for damages, under the Death act, resulting to the widow and next of kin by reason of his

death. This writ of error is to review the submission of the case to the jury, for its determination, by the learned trial justice.

It is only necessary to consider two assignments of error— one upon the denial of the motion to nonsuit the plaintiff, and the other upon the denial of the motion to direct a verdict for the defendant.

The facts adduced at the trial, so far as it is necessary to consider them upon these assignments of error, are not in dispute. The situation and the surrounding circumstances were such that no dispute whatever could arise as to matter of fact in these respects.

The deceased (Sofield) was at work with other workmen at what was known as furnace No. 2, in the copper reverberatory building, as a "helper." He was employed the day before the accident, and had been at work only one day. This furnace was running off a blast of copper metal, and the deceased was engaged principally in what is known as "skimming" the furnace, and doing errands for the foreman in charge of the operation of the furnaces.

Four other workmen under the same foreman were engaged at furnace No. 1, some fifteen feet northerly of furnace No. 2, and on a line with it and several other furnaces in that building. These latter workmen were engaged in operating furnace No. 1, which was producing molten copper to be ladled and thrown into the shot-well to make "shot copper" as it is called, or blue vitriol. This tank, pit or shot-well was situate about fifteen feet northerly of furnace No. 1, and, on a line about seven feet from the line of furnace No. 1, No. 2 and the other furnaces measured at right angles, leaving a passageway of about that width between the line of the furnaces and the nearest side of the shot-well measured across at right angles. This shot-well or pit was about seven feet long, about six feet wide and about six feet deep, and at the time the work commenced filled with cold water. This passageway led through a door into the yard at the north of this building, in which, among other things, there was a blacksmith shop

for the uses of the factory. The nearest edge of the shot-well was twenty inches back from the line of the nearest jamb of this door. There were three other doors at the northerly end of the building leading into this yard, and several passageways beside the one which ran past the furnaces by which access could be gained to the yard and blacksmith shop.

This pit or well was sunk in the floor of the factory, without any railing or other safeguard around it, but it was covered with planks furnished by the defendant company for that purpose. It was always kept so covered when not in use, uncovered when in use, and the planking replaced to cover it again when the use of it ceased. The evidence is that this planking, when placed over the pit, afforded perfect security and protection from anyone falling into it, and that it was easily adjustable to the top of the pit for these purposes.

The workmen commenced work at this furnace No. 1 about seven o'clock in the evening. They first uncovered the pit by taking the planking off the pit, it then being filled with cold water. The work of throwing the molten copper from the furnace into the nearest side of the pit proceeded. As the pit became filled on that side the plank was replaced and the work proceeded until midnight. The workmen then took a recess for lunch and went to the yard at the north end of the building, just outside the door of the passageway, for that purpose. At that time the pit had been filled so that about two feet of it had been re-covered with the planking. The other portion these workmen left uncovered whilst they were away taking the lunch, although the planking which they had taken off remained to be replaced over the pit. Sofield at this time was engaged at furnace No. 2, and he was just at that time told by the foreman to go and get a "rabbling-iron" from the blacksmith shop in the yard. In doing this he could use one of several passageways and doors leading into the yard. He was not directed as to the course he should take to do this errand. He started, apparently, along the passageway in front of furnace No. 1 and the other furnaces, and stumbled, slipped or fell into the uncovered

portion of this pit. The evidence of the cause of his thus falling is variant. It will be again observed that the passageway was about seven feet wide from the line of the furnace to the nearest edge of the shot-well. The portion of the well to the extent of about two feet nearest the passageway was already covered with planking. It will be observed that the nearest edge of the well was about fifteen inches from the jamb of the door out of which he intended to pass if he intended to use the passageway at that door, and the edge of the planking at the uncovered portion of the well must have been about thirty inches from that point. There is evidence that the door of furnace No. 1 was open, and the evidence is that to be safe from the heat of it would be necessary to keep about two feet away from it. There is some evidence that he was seen standing looking at the well and that he took a diagonal course to go through the middle door of the building, and that to do so he attempted to jump over the pit and a row of moulds on the other side of the pit and thus fell in. He got out at the corner of the pit and went into the yard by this middle door. The evidence is clear and undisputed that he knew of the location of the pit. On July 3d, a week before his employment, he was there watching the workmen at this very work. On the night of the accident he passed it several times, and stopped and talked there with his fellow-workmen. He was once, during the evening, sitting on one of the moulds, about six feet from the pit, for some time, about fifteen minutes before the workmen took the recess for lunch, and after the accident and before his death he said to one witness that he knew the pit was there and that he did not know how he came to fall in it. The evidence is clear that the place was well lighted, especially this passageway, both from many electric lights in the building and also by the light from the furnaces.

Substantially all of this evidence appeared in the plaintiff's case, and the evidence on the part of the defence was merely an extension of the plaintiff's case, directed principally to the manner of the accident, the obviousness of the danger, the

risks assumed by the situation and also to the contributory negligence of the plaintiff.

The evidence is cited in much detail in order to demonstrate as clearly as possible what conclusion should have been reached by the trial justice. These cases are important in their results to the parties, and require careful consideration.

The motions to nonsuit, and to direct a verdict, were made upon several grounds—that no negligence had been established against the defendant; on the ground of the contributory negligence of the deceased; that danger was incidental and obvious; and, also, that the risk of the danger which resulted in his death was assumed by him in his employment.

Under the principles of law applicable to the relation of master and servant, it is conceived that there existed no ground upon which a recovery could be sustained. The learned trial justice, in refusing to direct a verdict, said : "It is with very great misgiving that I hold the case. I confess to very great doubt of the right of recovery," and in his instructions to the jury he said : "Now, I have decided to leave to you as the only possible question of any neglect or default on the part of the defendant, this : Whether it was reasonable care for the safety of the employes compelled to walk or having the right to walk up and down that passageway and out the doors, to have an unguarded opening containing hot water, near enough to the passageway to render it probable that a person walking along the passageway using reasonable care might fall into the water. You will remember that on the occasion when Sofield did fall into this pit, it was guarded for a portion of its length upon the side next to the passage by being covered by one or more planks, so that the opening into which he fell must have been, I take it, all of three feet back from the line of the door jamb, and it may be somewhat difficult to see how a person using that passageway with ordinary care could have fallen into the water if the pit was in that condition. I can see no other ground of possible liability."

Under the facts of this case there existed no possible ground

of liability. The defendant had constructed a pit, which, when in use, was highly dangerous to fall into. When it was in use it must of necessity, in the operation of the business be entirely or partly open, and it had furnished for it the most secure safeguard which could be used, when it provided sufficient, fit and suitable planking to cover it, when necessary, when it was not in use, or during any intermission of its use or disuse of it. This planking was a perfect safety appliance for the protection of employes or co-employes in their work at the blast furnaces in connection with the pit, easily adjustable for that purpose. There was, under the conceded facts of this case, no want of reasonable care on the part of the defendant in furnishing proper appliances for its servants to use in their own protection, or the protection of their co-employes, in the performance of their work and their duties to the master.

Where the use of appliances or safeguards affects the safety of the place, the exercise of reasonable care in this respect relieves the master from liability. *McAndrews* v. *Burns,* 10 *Vroom* 117; *McLaughlin* v. *Camden Iron Works,* 31 *Id.* 557, 559; *Maher* v. *Thropp,* 30 *Id.* 186; *Steamship Co.* v. *Ingebregsten,* 28 *Id.* 400; *Walker* v. *Boston and Maine Railroad Co.,* 128 *Mass.* 8.

The deceased (Sofield) and the workmen at furnace No. 1 were fellow-servants. They were engaged in the same common employment in the operation of these furnaces, and he assumed the dangers arising from the negligence of his co-employes in the performance of their duties to the defendant in such employment, and the cause of the accident, independent of incidental or obvious dangers, or those which arose by reason of his contributory negligence, was the failure of his co-servants to use the means and appliances provided by the master for the work, for their own and for his protection from danger. In other words, it was the failure of his fellow-workmen during the intermission of the work to cover with the planks provided the open space of the pit, and this was a part of

their duty in the performance of the work in which they were engaged. The restoration of this planking would have been a complete and perfect security to the deceased from any danger whatever. It was the means or appliances which had been furnished by the defendant, as master, for that purpose and for their use, and the failure to have the pit covered, at the time of the accident to Sofield, if negligent, was the act of his co-servants in this common employment for which the defendant cannot be liable. It was a negligent act in the performance of their duty.

It will be observed that this work commenced with the uncovering of the pit at seven o'clock; as the work of filling the pit with molten copper progressed from the edge the planking was relaid, and at the intermission left partly uncovered. If there was any duty due the deceased at that time it was that the pit should have been re-covered by these workmen, and the failure to re-cover was a neglect of their duty to him to perform their work with reasonable care to protect him from danger. The very want of safety was caused solely by the work which his co-servants were performing. The place, the appliances for protection and the work were all coincident.

The general rule of the assumption by the servants of dangers arising from the risks by reason of the negligence of co-servants is well established and needs no repetition.

In *Curley* v. *Hoff*, 33 *Vroom* 758, this court held the rule of fellow-servants to be "as applicable to a case where the work involves the place as to any other. * * * There was no lack of adequacy of materials for sheathing and bracing; the fault, if any, was entirely with the servants engaged in the work and not with the master. The foreman in this regard was the fellow-servant with the plaintiff. * * * The test must always be whether the negligent act or omission was in the discharge of the master's or the servant's duty. In the Ingebregsten case it was acknowledged that inspection incidental to the use of a tool or appliance was the servant's and not the master's duty. So in the

case in hand, the keeping safe a place of working incidental to the work itself was the servant's and not the master's duty." In *McLaughlin* v. *Camden Iron Works, supra,* Mr. Justice Collins, writing the opinion, said: "Where appliances for work are needed the duty is on the master to use reasonable care in their selection; but carelessness in their use, or failure to use them on the part of his servant, whereby injury is received by a fellow-servant in the same common employment, is not chargeable to the master, no matter what may be the grade or authority of the servant."

The same rule was applied in *McAndrews* v. *Burns,* 10 *Vroom* 117. The test of liability is not the safety of the place or appliances at the instant of injury, but the character of the duty the negligent performance of which caused the injury. *St. Louis, &c., Railroad Co.* v. *Needham,* 27 *U. S. App.* 227.

In *Quebec Steamship Co.* v. *Merchant,* 133 *U. S.* 375, where the plaintiff, a stewardess on an ocean steamer, sued the steamship company for injuries sustained by falling overboard in consequence of the failure of a porter and a carpenter of the ship to properly re-adjust the movable rail closing the gangway after it had been removed for the discharge of passengers, it was held that the negligence was that of a fellow-servant, for which the employer was not responsible.

In *Filbert* v. *Delaware and Hudson Canal Co.,* 121 *N. Y.* 207, it was there held that the failure of employes to cover a pit which they had used the day before and left open over night, in consequence of which another employe fell in, did not render the master liable.

The determination reached is that the cause of the death of the intestate of the plaintiff was the negligent act of his co-servants in the performance of their duty towards him in the same common employment, and that there should have been a nonsuit or direction of a verdict at the trial.

Judgment is therefore reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—MAGIE (CHANCELLOR), VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 12.