## Wytheville.

## MORRIS & CO. v. J. F. ALVIS.

### June 16, 1921.

1. MASTER AND SERVANT—*Safe Place to Work—Unguarded Elevator Shaft—Lights—Assumption of Risk.*—The door of an elevator shaft in defendant's building had been broken off and not replaced for a year or more before the accident by which plaintiff, and employee of defendant, was injured by falling into the shaft. It was the rule or custom of defendant that the elevator, when not in use, should be kept flush with the door as a substitute for the door. The accident occurred at night and the lighting system in the building was deficient. But these conditions had obtained during the whole time of plaintiff's employment and he was fully apprised of them and continued to work without protest, therefore he could not complain of them.

2. MASTER AND SERVANT—*Assumption of Risk—Obvious Dangers.*—It is true that as a general rule an employee does not assume risks arising out of the negligence of the master, but, when the rule is thus stated, it has reference to the ordinary risks of the business, and there is nothing better settled than that, where the danger is open and obvious, and the servant continues to work with knowledge of the danger, he assumes the risk whether it be a risk ordinarily incident to the business or not, and whether it be due or not to the master's want of reasonable care as an original proposition.

3. MASTER AND SERVANT—*Elevators—Non-Assignable Duties—Fellow Servants.*—In an action by a servant for injuries sustained by a fall down an elevator shaft, it appeared from the evidence that defendant had adopted, with plaintiff's knowledge and acquiescence, a method of guarding the shaft by leaving the elevator flush with the floor instead of by a protecting door.

   *Held:* That, the detail of closing the shaft, like the closing of a door or the manipulation of other instrumentalities in a common employment, was not an unassignable duty; and an instruction which might be construed as misinforming the jury in this respect was erroneous.

4. MASTER AND SERVANT—*Fellow Servants—Elevators.*—Where a master had adopted the rule that employees using an elevator should leave it flush with the floor to protect the shaft, an employee assumes the risk of the negligence of his fellow servants who knew the rule and their duties with respect to it.

5. MASTER AND SERVANT—*Presumption as to Non-Assignable Duties.* —The general rule is that, in the absence of proof, a master is presumed to have discharged all of his non-assignable duties.

6. MASTER AND SERVANT—*Assumption of Risk—Question for Jury.*— The doctrine of assumed risks is generally regarded as a harsh one, and is not to be extended. In doubtful cases, the question of its applicability is to be determined by the jury.

7. MASTER AND SERVANT—*Instructions—Non-Assignable Duties.*—An instruction "that the law does not require that an employee shall anticipate and guard against negligence on the part of his employer, but, on the contrary, he has the right to act on the assumption that his employer has performed his unassignable duties," while correct in the abstract was misleading under the evidence in the instant case and particularly in view of another instruction which told the jury, by undeniable implication, that it was the defendant's non-assignable duty to keep the elevator floor in proper position.

8. NEW TRIALS—*Judgment for Movant—Appeal and Error—Judgment for Appellant or New Trial.*—On motion by defendant for a new trial, the trial court was not asked to enter judgment for defendant pursuant to section 6251, Code of 1919, nor did the petition for a writ of error ask the Supreme Court of Appeals for a final judgment pursuant to section 6355 of the Code of 1919, though there was a request to that effect in defendant's reply brief. While such failure to request final judgment would not prevent the lower court or the appellate court from entering a final order in a proper case, it is perhaps a circumstance indicating that the merits of the case ought to finally be determined by a jury; and in the instant case the Supreme Court of Appeals felt that there should be another jury trial.

9. CONTRIBUTORY NEGLIGENCE—*Question for Jury.*—Where the plaintiff's contributory negligence is not carried by the evidence beyond the realm within which reasonable men might differ, the question is one for the jury.

10. MASTER AND SERVANT—*Elevator—Contributory Negligence— Case at Bar.*—Plaintiff was injured by a fall in the dark into an elevator shaft. The elevator was usually kept flush with

the floor. Plaintiff admitted that in first passing the elevator he felt for and located it, but that on returning immediately he relied on his estimate of distance as to its position and fell into the shaft. But this was not equivalent to an admission of his appreciation of his danger as he did not want to walk into the elevator, even if it was in place. Moreover, it cannot be said as a matter of law that, plaintiff, having a moment before located the elevator by his sense of touch, was negligent in risking his judgment as to its position in passing a second time.

11. MASTER AND SERVANT—*Contributory Negligence—Assumption of Risk—Negligence of Master.*—Contributory negligence and assumed risk are separate and distinct defenses. An employee may be free from negligence in the particular circumstances of an accident, and still be barred from recovering damages for injury resulting therefrom, because he has assumed the risk, and this may be true, even though the accident was due to an unsafe place or an unsafe appliance furnished by the master. Indeed, there is never any occasion for the application of the doctrine of assumed risk, unless there has been some question of original negligence on the part of the master. If the master has been free from negligence *in toto* and *ab initio*, there is no liability, and the question of assumed risk (and of contributory negligence as well) does not arise.

12. APPEAL AND ERROR—*New Trial—Judgment by Appellate Court—Sections* 6251-6365, *Code of* 1919—*Remand.*—While the policy and purpose of sections 6251 and 6365 of the Code of 1919, looking to a speedy determination of litigation and the rendition of a final judgment where it is clear, that upon the facts before it, the court can by such order attain the ends of justice, is approved, in the instant case, involving the question of whether a servant assumed the risk of the negligence of a co-employee in failing to leave an elevator flush with the floor, the court, not feeling sure that the ends of justice would be attained by a final order, remanded the case for a new trial.

Error to a judgment of the Circuit Court of the city of Lynchburg. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Volney E. Howard* and *Jno. L. Lee,* for the defendant in error.

*Harrison & Long,* for the plaintiff in error.

KELLY, P., delivered the opinion of the court.

J. F. Alvis, while in the employment of Morris & Company (incorporated), fell into an unguarded elevator shaft in that company's building and received in juries for which he brought this action. There was a verdict in his favor for $12,500, and thereupon the court entered the judgment under review.

Morris & Company is a corporation extensively engaged in packing and selling meats, and has a branch house in Lynchburg. Alvis had been working for the company about five months. His principal business was that of city salesman and collector, but it was further his duty at times and as occasion required to assist with various kinds of work in the house. He and other employees were occasionally there at night in the performance of some of their duties and in the regular line of their employment.

The accident occurred on the night of October 26, 1917. On the afternoon of that day one Ross, a traveling auditor for the defendant, had come to Lynchburg to check up the business, and not having completed his work during the afternoon, he and Alvis came back to the building that night. There is a contention on behalf of the defendant that Alvis was there voluntarily, and not in the line of his employment, and another contention that he was there temporarily in the capacity of manager, but we think the evidence is otherwise.

The first floor of the building consists of three main compartments, a shipping room in front (reached by the

main entrance to the building), an office room to the right of the shipping room, and a canned meat room in the rear. Between the shipping room and the canned meat room there is an elevator shaft enclosed on three sides, the fourth and open side facing the shipping room. To the rear of the office and to the right of the elevator is an entrance to a cellar stairway. To the left of the elevator is the entrance to the meat room. The situation of the main entrance, the office door, the open side of the elevator shaft, and the door to the meat room are relatively such that a man making a trip from outside of the building through the main entrance into the office, and thence to the meat room, would on coming in the main entrance walk diagonally to his right through the shipping room into the office, then, coming back out of the office, he would walk again diagonally to his right, passing the elevator door, and around the elevator shaft into the meat room.

According to the testimony of the plaintiff, in some respects very much in conflict with the testimony of other witnesses, but accepted by the jury, the circumstances of the accident were substantially as follows:

When Ross and Alvis went back to the office on the night in question, they entered the shipping room through the main entrance, and found their way through the shipping room into the office by means of the reflection of a light from that compartment, there being a glass partition between the office and the shipping room. The electric lamps or bulbs in the office were insufficient for their purposes, and Ross suggested that they must have more light. Thereupon both of them started in search of other bulbs which they hoped to find in some other compartment. They went first to the meat room following the course above indicated, the plaintiff feeling his way around the wall until he was sure that he had passed the elevator opening. Failing to find the bulbs they wanted in the meat room, they turned back, intending to go to the cellar where they thought they

would find them. To do this they had to pass the open elevator door again. The plaintiff, who was immediately in front of Ross, did not on the return trip feel his way, but depended upon his estimate of the distance, and when he thought he had proceeded far enough to be beyond the opening in the elevator, he stepped into the shaft and fell to the floor of the elevator which at that time was in the cellar. It had been left in that position by two colored men whom Ross had "picked up on the street" that afternoon to help him. He didn't know "who they were or anything about them;" and so far as the record discloses nobody connected with either the plaintiff or the defendant ever heard of them either before or after the accident.

There had originally been a door to the elevator shaft on the shipping room floor, but this door had been broken off or displaced for a year or more, and was not in use at any time after Alvis came there to work. Instead of replacing the door, the defendant adopted the expedient of using the elevator, when not in use for elevator purposes, to close the shaft by placing and leaving it so that the floor thereof was even with the floor of the shipping room, thus practically extending the floor of the shipping room into the elevator shaft, and thus obviating the danger resulting from the displaced door. In other words, the rule of the company, as a part of its plan for maintaining the first floor of its building in a safe condition, required that the elevator, when not in use, should be left so that the floor thereof would be flush with the office floor. The evidence is not entirely clear as to whose business it was to see that the elevator was left in this position when not in active use, but it was a freight elevator, operated from time to time by various employees, and the fair inference appears to be that this duty devolved upon any employee who had occasion to operate the conveyor.

It is also shown that for some time prior to the accident the lighting system in the building had been in a defective condition, some of the switches not working well, and also that the supply of electric bulbs was entirely insufficient to thoroughly light the building at night. There was not a great deal of night work to be done, and the custom had been to move the limited number of lights from place to place as occasion required.

The plaintiff, Alvis, was fully apprised of all of the foregoing conditions. The absent door, the rule or custom of keeping the elevator, when not in use, on the office floor as a substitute for a door, and the insufficiency of the lighting system were all conditions which had prevailed ever since he began work with the company. He testifies about all of these fasts, and his testimony shows that he was thoroughly familiar with them all, saying particularly with reference to the lights, as showing that he was often there at night, that "there never were enough bulbs for all of the place and we shifted them about from one place to another when we worked at night." This statement was in reply to a question by his counsel as to how long that condition had prevailed; and he further testifies that if he ever made any complaint to the company about that condition, he does not remember it.

The declaration charges the defendant with negligence (a) in permitting the door to remain broken and displaced, (b) in failing to furnish sufficient lights, and (c) in failing to have the elevator in proper position at the time of the accident; and says that "by reason of the said several negligences operating severally and concurrently the position of defendant's employees while using the said ground floor and the said several rooms or compartments thereof including said office room in the night time (the place was caused) to be needlessly, extraordinarily and negligently dangerous."

[1] It is earnestly insisted by counsel for plaintiff that these alleged acts of negligence cannot be looked at separately, but that they must be viewed collectively, that it was "the concurrence of these conditions" which created the danger. We are unable to appreciate the force of this contention. Of course, if there be two causes, exclusive of a plaintiff's contributory negligence, concurring in an injury, for one of which the defendant is not responsible and for the other of which it is, there is usually a case of liability. But here it is not clear that the defendant can be held legally responsible for either of the grounds upon which it is charged with being negligent. The door to the elevator on the shipping room floor had never been in use since the plaintiff began work, and he knew all about that fact, and all about the substitute which had been adopted in place of it. There might be some question as an original proposition whether the adoption of the substitute was a safe and suitable rule or method, but the plaintiff cannot make this point because he was fully apprised of the rule or method, and continued to work without protest. With reference to this arrangement in itself, therefore, as well as with reference to the condition of the lights, he can make no complaint.

[2] It is true that as a general rule an employee does not assume risks arising out of the negligence of the master, but when the rule is thus stated, it has reference to the ordinary risks of the business, and there is nothing better settled than that where the danger is open and obvious and the servant continues to work with knowledge of the danger, he assumes the risk, whether it be a risk ordinarily incident to the business or not, and whether it be due or not to the master's want of reasonable care as an original proposition. This principle is nowhere more firmly established than in Virginia, and is not in any way negatived, but, on the contrary, is distinctly recognized in the case of *Norton Coal Co.* v. *Murphy*, 108 Va. 528, 62 S. E. 268; *C. & O. Ry.*

*Co.* v. *Meadows,* 119 Va. 34, 89 S. E. 244, and *Clinchfield Coal Corp.* v. *Ray,* 121 Va. 318, 93 S. E. 601, relied upon by the plaintiff.

[3] There are two assignments of error. The first one involves the action of the court upon the instructions to the jury. Instruction No. 1, given for the plaintiff, was as follows:

"The court instructs the jury that it is the duty of the master to exercise ordinary care to provide a reasonably safe place for his employee to work while in the discharge of his duties within the scope of his employment, for the protection of the employee against danger of accident and injury, having due regard to the nature of the work to be performed by the employee and the dangers naturally incident thereto; and a failure to perform this duty would be negligence. This duty is unassignable and if intrusted to any employee the master is responsible for the manner of its performance by such employee."

The last sentence of this instruction was misleading and erroneous as applied to the facts of this case. The plaintiff proved a case in which the defendant had adopted, with the plaintiff's knowledge and acquiescence, a substituted and perhaps originally questionable method of guarding the elevator shaft. The case in this respect is, therefore, exactly what it would have been if the original method of protecting the shaft by a door had remained in use. The detail of closing the shaft, like the closing of a door or the manipulation of other instrumentalities in a common employment, was not an unassignable duty. ( See Labatt M. & S. (2nd ed.), sec. 1540, and cases cited, particularly *Mellen* v. *Thomas Wilson Sons & Co.,* 159 Mass. 88, 34 N. E. 96; *Madigan* v. *Oceanic Steam Nav. Co.,* 178 N. Y. 242, 70 N. E. 785, 102 Am. St. Rep. 495; *Kennedy* v. *Netherlands Am. Steam Nav. Co.,* 76 N. J. L. 618, 72 Atl. 382; *Miller* v. *Centralia Pulp & Water Power Co.,* 134 Wis. 316, 113 N. W. 954,

13 L. R. A. (N. S.) 742; *Kraeft* v. *Mayer*, 92 Wis. 252, 62 N. W. 1032; *Geoghegan* v. *Atlas S. S. Co.*, 146 N. Y. 369, 40 N. E. 507; *Quebec Steamship Co.* v. *Merchant*, 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656; *Sofield* v. *Guggenheim Smelting Co.*, 64 N. J. L. 605, 46 Atl. 711, 50 L. R. A. 417.

A case very much in point upon the general principles here involved is, *Pawling* v. *Hoskins*, 132 Pa. St. 617, 19 Atl. 301, 19 Am. St. Rep. 618, in which the court said: "The trap-door was used only by the engineer, who was under strict orders from his employers to close it behind him whenever he passed through it. He was the first to enter the building in the morning and the last to leave it at night. The plaintiff knew the location and use of the door, and passed it several times each day for six months or more before the accident. On the morning of November 28, 1887, the plaintiff came to his work as usual, and passing rapidly through the hall, fell into the opening at the trap-door. The engineer had passed into the building a few minutes before, and the evidence indicates that he was the only person who had done so prior to the plaintiff's arrival. He says he shut the trap-door behind him; but this is impossible, if, as the plaintiff alleges, it was open when he reached it.

"But the question to be considered is, what did the defendants do or leave undone, in violation of their duty to the plaintiff? In what respect were they negligent? It cannot be said that they were negligent in permitting the plaintiff to pass through the hall without any knowledge of the existence of the trap-door, for he testifies that he knew all about its existence and use. There was no negligence in failing to instruct the engineer in his duty to keep the trap-door closed, for it appears in proof, and is not questioned, that such instructions were carefully given. There was no negligence in the manner of its construction. It was safely built, and when closed, prevented the possibility of accident to those passing through the hall. There was

no negligence in the fact of its existence, for it is conceded that it was a necessary means of access to the engine in the cellar, by which the machinery of the establishment was moved. By whose fault, then, was the accident made possible? Clearly, by that of a co-employee who neglected to close the trap-door behind him, notwithstanding the positive orders of the employers."

[4-6] The last sentence of plaintiff's Instruction No. 1 could hardly have been construed as referring to anything but the placing of the elevator. It would certainly have been construed as including that duty. The two negro men picked up on the street, though employed for only a few hours, were doing the same sort of work which other employees were constantly doing with the elevator. They were fellow-servants of the plaintiff and if they were properly instructed as to the position in which they were to leave the elevator when they quit using it, their failure to properly place it brought about a danger, the risk of which had been assumed by him. If they were not properly instructed, then the defendant omitted a part of its non-assignable duties, with reference to the method of doing the work. What the plaintiff assumed was the risk of the negligence of fellow-servants who knew the rule and knew their own duties with respect to it. There is no evidence to show that these two unknown temporary employees either were or were not given any instructions about the position in which they were to leave the elevator. The general rule is that, in the absence of proof, a master is presumed to have discharged all of his non-assignable duties. The doctrine of assumed risks is generally regarded as a harsh one, and is not to be extended. In doubtful cases, the question of its applicability is to be determined by the jury. Whether the presumption above mentioned can be carried far enough in this case to enable us to hold as a matter of law that the plaintiff assumed the risk of what these two employees did,

without affirmative proof that they were instructed, may be open to question; but if not, then the question was certainly one for the jury upon proper instructions, and the instruction under consideration, in its plain effect, goes the full length of telling the jury that the defendant could not under any circumstances assign the task of closing the shaft so as to exempt itself from liability for the negligence of a fellow-servant. This was error, and it was not cured by any other instruction given in the case.

[7] Instruction No. 5, given for the plaintiff over the defendant's objection and exception, was as follows: "The court instructs the jury that the law does not require that an employee shall anticipate and guard against negligence on the part of his employer, but, on the contrary, he has the right to act on the assumption that his employer has performed his unassignable duties."

This instruction is correct in the abstract, but misleading and erroneous under the evidence, and particularly so in view of the error contained in Instruction No. 1. . The latter instruction told the jury, by undeniable implication, that it was the defendant's non-assignable duty to keep the elevator floor in proper position. Instruction No. 2. aggravated this error by telling them that the plaintiff had the right to assume that this erroneously alleged duty had been performed. This was the vital error in the instruction, but it would have been improved by a further qualification showing affirmatively, and without the aid of other instructions, that the rule asserted by it could have no application to the absence of sufficient lights, because the evidence showed that the plaintiff had long known and had not complained of that condition.

The court refused to give two of the instructions asked for by the defendant. As to these, what we have already said about instructions one and two given for plaintiff will be sufficient to indicate our views, if the case is tried again.

[8-10] The second assignment of error is that the court ought to have sustained the motion for a new trial on the ground that the verdict was contrary to the law and the evidence. We shall enter an order reversing the judgment and awarding a new trial for error in the instructions. It was not contended in the lower court that a final judgment ought to have been entered for the defendant pursuant to section 6251 of the Code, nor did the petition for the writ of error ask this court for a final judgment pursuant to section 6365 of the Code. There was a request to this effect in the defendant's reply brief; but the motion below and the petition here asked only for a new trial. The failure to make such a motion or to include the same in a petition to this court, would not estop the losing party from obtaining, or prevent either the trial court or the appellate court from entering, a final order, under the sections of the Code mentioned, in a proper case. But such an attitude on the part of a party complaining of a judgment is perhaps a circumstance worthy of some consideration as indicating that the merits of the case ought to be finally determined by a jury. In this case, while thoroughly convinced of the error in the instructions, we feel that there ought to be another jury trial. The only possible ground upon which we could hold that the plaintiff's recovery is barred as a matter of law is that he assumed the risk. This ground was relied upon as a defense before the jury, and the defendant asked for and obtained instructions thereon. But in presenting to us its contention that the verdict was contrary to the evidence, principal reliance was upon the plaintiff's contributory negligence, and his assumption of the risk as a matter of law is embraced in this assignment of error only inferentially, if at all. The plaintiff's contributory negligence is not carried by the evidence beyond the realm within which reasonable men might fairly differ, and this question, therefore, was one for the jury to settle. It is true that the

plaintiff says in his testimony that he was conscious of the proximity of the elevator, that on going to the meat room he felt his way along the wall, so as to avoid walking into it, and that on his return he did not feel his way, but relied on his estimate of distances as to its position; but this does not necessarily mean that he appreciated the danger and thought he might fall to the cellar if he stepped through the approach to the elevator. He did not want to walk into the elevator, even if its floor was in place, because his errand was elsewhere. Moreover, solely upon the question of contributory negligence, we would hardly be prepared to say as a matter of law that, having just a moment before fixed the location of the elevator by his sense of touch, he was negligent in risking his judgment as to its position in passing it the second time.

[11] It is, of course, well understood that contributory negligence and assumed risk are separate and distinct defenses. An employee may be free from negligence in the particular circumstances of an accident, and still barred from recovering damages for injury resulting therefrom, because he has assumed the risk, and this may be true, even though the accident was due to an unsafe place or an unsafe appliance furnished by the master. Indeed, there is never any occasion for the application of the doctrine of assumed risk unless there has been some question of original negligence on the part of the master. If the master has been free from negligence *in toto* and *ab initio*, there is no liability, and the question of assumed risk (and of contributory negligence as well) does not arise.

[12] In this case the very serious question confronting the plaintiff is whether he assumed the risk, not, to be sure, of a permanently unsafe place, but of the danger that a co-employee would, in the course of their common employment and in the discharge of an assignable duty, render the place unsafe by negligently leaving the elevator shaft unpro-

tected.   If he did assume this risk, then the question of his own negligence, or freedom from it, in the particular circumstances of the accident, is not material to the defense.

Whether his assumption of the risk of injury from the negligence of the two negro men who left the elevator out of place follows as a matter of law from the evidence in the record is a question upon which we do not express any final conclusion.   The case was tried below and was originally presented to this court in such a way as to indicate that both parties probably regarded the question as one within the province of the jury.   We approve the policy and purpose of sections 6251 and 6365 of the Code, looking to a speedy determination of litigation and the rendition of a final judgment wherever it is clear that, upon the facts before it, the court can by such order attain the ends of justice.   In this instance, we are not sure that these ends could be attained by a final order, but, viewing the case as a whole, we are of opinion that it should be remanded for a new trial, and an order to that effect will accordingly be entered.

*Reversed.*