119 U.S. 566
 7 S.Ct. 1366
 30 L.Ed. 477
 CHICAGO & N. W. RY. CO.
v.
MCLAUGHLIN, EX'r, etc.
 December 20, 1886.
 
 Action by John M. O'Neil, the testator of the defendant in error, against the Chicago & North-Western Railway Company, plaintiff in error, to recover damages for personal injuries resulting to him while in its employ from its alleged negligence. The facts appear from the following charge of SHIRAS, J.:
 
 
 1
 'In this cause plaintiff seeks to recover damages in the sum of fifteen thousand dollars against the defendant for certain injuries alleged to have been received by plaintiff on the eighteenth day of October, 1877, while in the employ of defendant at Clinton, in this state; the plaintiff averring that the injuries coml ained of were caused by the negligence of the servants and employes of the defendant in the management of the switch-engine in use at defendant's yards at Clinton, Iowa.
 
 
 2
 '(2) On part of defendant the negligence charged by plaintiff upon defendant is denied, it being claimed that the accident did not result from any want of ordinary care on part of defendant, or any of its employes; that the accident resulted from one of the usual perils and risks inseparable from the business in which the defendant is engaged, to-wit, operating a railroad, the risk and hazard of which was assumed by the plaintiff when he entered the employ of the defendant. And defendant further pleads that even if it be true that the defendant, through its employes, was guilty of negligence in the manner claimed, that the plaintiff on his part was guilty of negligence contributing to the accident, and hence cannot recover.
 
 
 3
 '(3) The first question, therefore, for you to consider is whether the plaintiff has made out the charge of negligence against the defendant. The burden of sustaining this issue is upon plaintiff, and he must by a fair preponderance of the evidence reasonably satisfy you that the allegation of negligence thus made is true, or, failing in so doing, your verdict must be for defendant.
 
 
 4
 '(4) Under the statute of the state of Iowa [Code 1873, § 1307] every corporation operating a railway is hable for all injuries caused to, and the consequent damages sustained by, the employes of such corporation in consequence of the neglect of a co-employe in the performance of his duty to the company; that is to say, the negligence of an employe in the discharge of the duties of his position in the employ of the company is deemed to be the negligence of the corporation, and will render the company liable for any injuries caused thereby to any of its other employes, unless the person injured is himself guilty also of negligence contributing to the accident.
 
 
 5
 '(5) In determining whether or not a railway corporation, through its employes, has or has not in a given case been guilty of negligence, the question for determination is whether ordinary care has been used; that is to say, such care as an ordinary, prudent man would exercise under similar circumstances,
 
 
 6
 '(6) Railway companies are not insurers or guarantors of the absolute safety of their employes. They are not required to exercise as high a degree of care towards their employes as is exacted of them towards passengers who may be upon their trains. If the company exercises ordinary care in a given case, and yet an accident happens, causing injury to an employe, the latter cannot in such case hold the company responsible therefor. In the manifold operations connected with the business of railroading, owing to its peculiar character, accidents may happen, causing injury to employes, without fault on the part of the company or its employes, and such accidents form part of the ordinary risks and hazards inseparable from the character of the business in which the companies are engaged, which ordinary risks and hazards persons entering the employ of such companies are held to have assumed themselves.
 
 
 7
 '(7) If, however, the accident is caused by the negligence of the company, or any of its employes other than the party injured, then the responsibility therefor is upon the company. In other words, employes are deemed to have assumed all the risks and perils pertaining to the business of railroading when the same is conducted and managed by the company with ordinary care, but they do not assume the risks and hazards caused by the want of ordinary care on the part of the company or its employes.
 
 
 8
 '(8) In cases, therefore, like the one now on trial, it is not enough to hold the company liable, for the plaintiff to simply show that, while engaged in the business of the company, he received an injury, no matter how serious in its character. The plaintiff must show that the accident causing the injury was due to negligence on part of the company.
 
 
 9
 '(9) As already statd to you, the negligence required to be shown to render the company liable to the employe is the failure to exercise ordinary care; that is to say, such care as an ordinary, prudent man would exercise under similar circumstances. What will amount to the exercise of ordinary care will vary greatly with circumstances, as under one state of facts that course of conduct which would amount to the exercise of ordinary care might, under another state of facts, fall far short thereof, and be clear proof of negligence. Therefore, in determining this question of the exercise of ordinary care in a given case, regard must always be had to all the facts and circumstances surrounding the parties, and the very time and place the accident may have happened. When human life or safety are involved, the law exacts a higher degree of care than is required in case where they are not put in peril. So, also, when a person puts himself in a position of known danger, the duty is placed upon him of exercising that degree of care which the circumstances require of any ordinarily prudent man so situated. Bearing these general principles in mind, it will be your duty to consider the evidence submitted to you, and determine, in the first instance, whether or not the charge of negligence made against the defendant is established by a fair preponderance of evidence.
 
 
 10
 '(10) There is evidence in this case tending to show that the plaintiff was in the employ of defendant at Clinton, Iowa, in October, 1877; that in obedience to the orders of the foreman properly in charge of the work repairing the way cars in the yard of the defendant, at Clinton, Iowa, the plaintiff, on the eighteenth of October, 1877, undertook the work of replacing certain lamp-brackets on a way car of defendant then standing on a track in defendant's yard, designated as 'Track No. 2;' that plaintiff went to the place where the way car was stationed, for the purpose of performing the work he was directed to do; that, before going up on the side of the car, he noticed the position of the switches, by the use of which engines or cars could be run in from the east upon the track where the way car was stationed which he was to repair, and that these switches, or some of them, were so turned as that an engine or car could not be sent in upon track No. 2, from the east, without a change in the position of the switch or switches; that the way car which plaintiff was to repair was the third car from the east, there being two other cars to the east of it, and therefore between it and the switch connecting with this track No. 2; that plaintiff, in order to reach the place upon the way car where the brackets were to be replaced, was obliged to use a ladder, which was inclined against the side of the car.
 
 
 11
 '(11) That while plaintiff was on this ladder, engaged in the performance of the work he was required to do upon the way car, a switch-engine belonging to defendant, with a way car in front of it, came from the main track in upon track No. 2; that upon the switch engine there was a fireman and engineer who were at their posts, and that there were also two switchmen to aid in getting the engine and car in upon track No. 2, and in making the coupling needed to be made; that the engine and car came in upon track No. 2, and came westward along the same to wards the place where plaintiff was at work, object being to couple onto the way car, which was the second one east of the car upon which plaintiff was at work.
 
 
 12
 '(12) That, as the engine came along track No. 2 for the purpose named, the fireman saw O'Neil at work upon the car, and when the engine had nearly reached the stationary way cars, seeing that O'Neil did not get down from the ladder, the fireman signaled the engineer to stop by crying out, 'Whoa!' That, in obedience to this signal, the engineer shut off steam and reversed the engine, and either wholly or nearly stopped the engine; that then, receiving a signal from the switchman, who was on the north side of the track, to move forward, he gave the engine a fora rd motion sufficient to bring the way car attached to the engine in contact with the stationary cars, and in consequence thereof the ladder upon which plaintiff was standing was overthrown, plaintiff being thrown upon the ground, and receiving the injuries complained of.
 
 
 13
 '(13) The first question for your consideration and determination is whether this accident resulted from the lack of ordinary care on the part of any of defendant's employes in charge of said engine, to-wit, the switchmen, fireman, and engineer. There is no evidence tending to show that the switchman on the north side of the track saw or could see plaintiff at the time of the accident, or had knowledge of his dangerous position, so that there is no claim made that he was negligent in the premises.
 
 [Pages 567-573 intentionally omitted]
 
 14
 The following, asked by the defendant, were refused:
 
 
 15
 '(1) Conceding to all the testimony its greatest probative force, it is not sufficient to warrant the jury in finding the defendant, or any of its servants, guilty of any negligence whereby the plaintiff received his injuries. (2) The undisputed and uncontradicted evidence shows that the plaintiff was guilty of negligence which directly contributed to his injury. You are therefore instructed to find for the defendant.'
 
 
 16
 There was a verdict for the plaintiff for $15,000, and judgment thereon, whereupon the defendant took this writ, alleging as error the refusal of his instructions numbered 1 and 2, and the giving of paragraphs 4, 5, 7, 11, 13, 14, 15, 16, 18, 20, and 22 of the charge.
 
 
 17
 '(14) It is claimed on part of the plaintiff that the switchman on the south side saw O'Neil's danger in time sufficient to have averted the danger. On part of defendant it is claimed that this switchman did not see O'Neil in time and under such circumstances as that it was his duty to either have stopped the engine, or warned the plaintiff of the danger. Has the plaintiff, by a fair preponderance of evidence, satisfied you that this switchman had knowledge of plaintiff's danger in time sufficient to have averted the accident, either by stopping the engine through a warning to the engineer, or by notifying plaintiff of the coming danger, so that he could have avoided the accident? It is not sufficient for it to now appear that possibly the switchman might have done so if he had then known all the facts that are now made apparent. The true inquiry is, was this switchman, acting under the light and knowledge he then had, wanting in the exercise of ordinary care in not stopping the engine, or in not notifying plaintiff of his danger? Did he or not have knowledge of the danger to which plaintiff was exposed, in time sufficient to enable him, by use of ordinary care, to have caused the engine to be stopped or to warn the plaintiff, so that he might have gotten down from the ladder before the cars came in contact?
 
 
 18
 '(15) It is further claimed on behalf of plaintiff that the fireman, Riggs, was negligent in not notifying the engineer of the peril to which plaintiff was exposed. There is evidence tending to show that Riggs saw the plaintiff upon the ladder, and knew of his position, and that there was danger of an injury being caused to him if he did not get down before the cars came in contact; that Riggs gave a signal to the engineer to stop in time to prevent the cars coming into contact, which signal the engineer obeyed by shutting off the steam, and reversing the engine. On part of plaintiff it is claimed that Riggs should have notified the engineer of the necessity for stopping the engine, namely, that there was a man in a dangerous position; and it is claimed that Riggs had time sufficient to have done so that the engineer could have prevented the cars coming in contact. On the part of defendant it is claimed that Riggs did all that could reasonably be expected of him; that he gave the proper signal to stop the engine; and that, in obedience thereto, the engineer reversed his engine, and brought it nearly to a stop, and then, before Riggs had time to ascertain the necessity for any further action on his part, the engineer, in obedience to a signal from the switchman, which could not have been reasonably foreseen by Riggs, gave a forward motion to the engineer, and that it was beyond the power of Riggs to again notify the engineer to stop in time to prevent the accident.
 
 
 19
 '(16) It was the duty of Riggs, if he saw that plaintiff was in a dangerous position, and that there was risk of an accident if the cars were brought into contact before plaintiff should get down from the ladder, to take such action as was reasonably within his power to stop the engine, and prevent the cars from coming into contact. When human life or limbs are in peril, ordinary prudence reqi res that all reasonable means should be used by those who are aware of the danger to avert the same, and avoid injury to the person exposed thereto. Riggs himself testified that he saw plaintiff upon the ladder, knew that he was in a dangerous position if the cars were brought into contact, and saw, as the engine approached the standing cars, that the plaintiff remained upon the ladder. Under these circumstances, was or was it not his duty to notify the engineer, who had the control of the engine, of the nature of the danger to be avoided, or was his duty discharged when he gave the signal to stop by crying out 'Whoa?' Did he or did he not have sufficient time to give such information to the engineer, if you find the same should have been given? It is for you to determine what ordinary prudence, when human life and limb were in danger, required of Riggs under the facts and circumstances known to him at that time, and whether Riggs did or did not do all that ordinary prudence required of him, and all that he had a fair opportunity to do, in the exercise of ordinary care, in the brief time in which he was required to think and act.
 
 
 20
 '(17) It is further claimed on part of plaintiff that the engineer did not exercise ordinary care and prudence on his part, in that, after receiving the signal to stop from the fireman, and after, in obedience thereto, reversing his engine, and bringing the same nearly to a stop, he then, in obedience to a signal from the switchman on the north side of the track, gave a forward motion to the engine, and brought the cars into contact, without first ascertaining the reason why the signal to stop was given by the fireman. On part of defendant it is claimed that the switchman and fireman have a right to signal the engineer, and that it is the duty of the latter to obey such signals, and if the switchman gave the signal, without fault on his part, there would not be negligence on part of an engineer in obeying the signal thus given.
 
 
 21
 '(18) That the engineer is bound to obey signals given by the switchmen is doubtless true as a general proposition, but by this can only be meant that the engineer is bound to obey if there is no good reason why he should not obey. Suppose he received a signal from a switchman to move forward when he sees that if he does he will cause an accident, would it not then be clearly his duty to disobey the signal? Suppose, at the instant he receives a signal from the switchman to move forward, his fireman notifies him that there is a man on the track in danger, and that he must stop. It cannot be doubted that in such cases the engineer must disobey the signal from the switchman. Take it in this case. Suppose the engineer knew that the plaintiff was on the ladder, exposed to danger, if the cars were brought into contact, and the switchman gave the signal to move forward, would it be acting with reasonable prudence to obey the signal, or would it not be clearly the duty of the engineer to disobey the same? But it is in evidence that the engineer in this case did not know in fact that plaintiff was in danger. He had received a signal from his fireman on the left of his engine requiring him to stop, and he obeyed it by shutting off steam, and reversing his engine. What inference did the engineer draw from the signal given him by the fireman to stop? Did he or did he not infer therefrom that there was some sufficient reason known to the fireman why the engine should be stopped? Was he not bound to so infer? And, if he did, what was it his duty to do when he received the signal from the switchman, on the other side of the track, to move forward? Did or did not ordinary care and prudence require of him to ascertain from his fireman the reason of the order to stop given by the fireman on his left, before he obeyed the order to move forward given him by the switchman on his right? The engineer himself testifies that the signal 'whoa,' given by the fireman, was given somewhat sharply, indicating the necessity for promptly stopping the engine; and he further testifies that, from the distance from the engine to the stationary cars, he supposed the order to stop was given by the fireman, not because the cars were close enough for coupling, but for some other cause or reason unknown to him, and that he started the engine forward, upon receiving the signal from the switchman, without making any inquiry of the fireman whether he could safely do so, or without inquiring why the fireman had ordered him to stop the engine. In so doing, did or did not the engineer exercise the care which ordinary prudence demanded of him?
 
 
 22
 '(19) If, under the instructions given you, you find that none of the employes of the company were guilty of negligence causing the accident, then your verdict must be for defendant, and you need not consider any other of the questions submitted to you. If, however, you find that the defendant was negligent in any of the particulars alleged against it, and that such negligence was the immediate cause of the injury to plaintiff, you will then consider whether the defense of contributory negligence set up by the defendant has been made out and sustained by a fair preponderance of the evidence, the burden of the issue in this respect being upon the defendant; or, in other words, in order to defeat plaintiff's recovery on the ground of contributory negligence on his part, you must be fully satisfied from the evidence that plaintiff was guilty of negligence which proximately contributed to the injury complained of.
 
 
 23
 '(20) It was the duty of the plaintiff, when he was engaged in the work at which he was put by defendant, to exercise ordinary care on his part to protect himself from danger. He knew, when he undertook the repairs on the car in question, that it stood upon a track where engines might possibly come, and he was bound to the exercise of all the care and watchfulness which an ordinarily prudent man would use under the same circumstances.
 
 
 24
 '(21) Extraordinary care was not required of him. He was expected to do the work that he was sent to attend to, and he could only be required to exercise the care and watchfulness that were compatible with the discharge of his duty to the company. Plaintiff testifies that he did not see or hear the engine when it was approaching, and it is claimed that his failure to notice its approach is proof of his negligence, on the theory that, if he had kept his senses on the alert, he would either have seen or heard the engine in time to have avoided the accident. On part of plaintiff it is claimed that his failure to notice the approach of the engine was due to the fact that the work he was engaged in doing so occupied his attention that, without fault upon his part, he failed to notice the coming of the engine either by sight or sound. You will consider all the evidence introduced in the case tending to show what work the plaintiff was required to do,—the position he occupied upon the side of the car, the direction in which his face was turned while at work upon the ladder, the character of the work upon which he was actually engaged, and the demands, if any, which this work made upon his attention, the distance from where the plaintiff was at work to the point where the engine came upon track No. 2, the number of cars, if any, between that upon which plaintiff was at work and the approaching engine, and all facts shown by the evidence adduced by either party which tend to throw light upon the question,—and from this evidence you will determine whether the defense of contributory negligence, as alleged by the defendant, has been established by a fair preponderance of evidence; the burden of establishing the same being, as already stated, upon the defendant.
 
 
 25
 '(22) If the evidence, under the instructions given you, fails to establish the fact that the plaintiff was wanting in the exercise of proper care and watchfulness while engaged in repairing the way car of defendant, then the defense of contributory negligence is not made out, an on this issue you should then find for plaintiff; but, on the other hand, if you find that the failure of plaintiff to notice the approach of the engine was due to a want of ordinary care and watchfulness on the part of plaintiff, you will then consider and determine whether the defendant had knowledge of the dangerous position of plaintiff, and of his failure to notice the approach of the engine in time to have avoided the injury to plaintiff by the exercise of reasonable care on its part; the rule of law being that, although the plaintiff may have negligently exposed himself to an injury, yet if the defendant, after discovering the exposed situation and danger, negligently incurred by the plaintiff, can, by the exercise of reasonable care on its part, prevent any injury to plaintiff, it is bound to do so, and a failure to exercise such reasonable care after knowledge of the danger to which plaintiff may be exposed will render the defendant liable for a resulting injury, notwithstanding the fact that plaintiff may have been in the first instance negligent on his part. Under such circumstances, plaintiff's negligence is not deemed to be a proximate cause of the injury. If, then, you find from the evidence that the plaintiff, through his failure to notice the approach of the engine in time to get down from his exposed situation on the side of the way car, was guilty of negligence contributing to the causing of the injury complained of, then your verdict must be for the defendant, unless you further find that, after discovering the fact that plaintiff was at work upon the way car in such a manner as to expose him to danger in case the cars were brought into contact, the defendant could, by the exercise of proper care, have prevented the accident, and that having knowledge of the danger to which plaintiff was exposed the defendant failed to exercise proper care, thereby causing the accident, in which case your verdict should be for plaintiff; that is to say, if you find from the evidence that the switchman Wilde and the fireman Riggs, or either of them, saw the plaintiff in his exposed condition, and knew the danger to which he would be exposed if the cars were brought in contact while the plaintiff was on the ladder, then it was the duty of such switchman or fireman, as already explained to you, to take such reasonable means as were fairly within his power to prevent bringing the cars into contact, after he knew that plaintiff had failed to notice the approach of the engine. If, by the use of such means on part of those in charge of the engine, the accident could have been prevented, and you find that they have failed to use such means, after having knowledge of the plaintiff's exposed position and failure to notice the approach of the engine, and that, in consequence of such failure, the accident was caused, then the fact that the plaintiff failed to notice the approach of the engine would not defeat his right of recovery. If, under the instructions given you, you find for the defendant, you will say so by your verdict.
 
 
 26
 '(23) If you find for the plaintiff, then you will determine the amount of damages to which plaintiff is entitled by reason of the injuries received by him; and, in considering the question, you will consider—First, the actual and necessary expenses incurred by plaintiff in procuring medical and surgical aid and nursing required by him in consequence of the injuries he received; second, compensation for the loss of time, if any, caused to plaintiff by the injuries received; third, for the pain and suffering caused to plaintiff by the injuries he received; fourth, if you find from the evidence that the injuries he received have affected plaintiff's health and strength and notable length of his life, and also if you find that plaintiff's injuries, or any of them are permanent, and are likely to continue for some time in the future, and that, in consequence thereof, plaintiff's ability to work will be lessened or destroyed, thereby causing a e cuniary loss to plaintiff, then he is entitled to such fair sum as will make good to him this loss and damage. In estimating this latter element of damages, in case you find that plaintiff is entitled thereto, you will bear in mind that the sum you award plaintiff therefor is awarded him now free from the uncertainties that pertain to human affairs, and should not be excessive, nor beyond what a sound and discreet judgment on your part would approve. In considering and reaching conclusions upon the various questions submitted to your determination, it is your duty, as I doubt not it will be your pleasure, to exercise your judgment wisely and impartially, ignoring all prejudice against corporations, and endeavoring to reach such a conclusion as is demanded by the right, and as is in accord with the law and evidence submitted to you. Your verdict should be in one or the other of the following forms: We, the jury, find for the plaintiff, and assess his damages at—dollars; or: We, the jury, find for the defendant. In either case the verdict must be in writing, and be signed by your foreman.' The following instruction was given at the request of the defendant: 'If you find that the evidence in this case, taken altogether, is equally as consistent with the exercise of ordinary care and diligence on the part of the defendant's servants as it is with the alleged negligence on their part, then the plaintiff's case is not made out, and he cannot recover.' N. M. Hubbard and Charles A. Clark, for plaintiff in error.
 
 
 27
 William A. Foster, for defendant in error.
 
 
 28
 WAITE, C. J., announced that the judgment of the court below was affirmed by a divided court.