### REGAN v. PARKER–WASHINGTON CO.

(Circuit Court of Appeals, Seventh Circuit. April 15, 1913.)

#### No. 1,865.

1. MASTER AND SERVANT (§ 185*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—"FELLOW SERVANT."

The basis of the liability of a master for injury to a servant is the breach of some positive duty to the servant; and where the injury resulted from the negligence of another servant, whether the two were fellow servants in such sense that the risk was assumed by the servant injured, and the master exempted from liability, depends upon the nature of the act in respect to which the negligence arose, rather than upon the relations between them in their employment. If the act was done in the discharge of some positive duty of the master to the injured servant, then the negligence was that of the master, and he is liable, otherwise not.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, p. 7662.]

2. MASTER AND SERVANT (§§ 103, 107*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—NATURE OF MASTER'S DUTY.

It is the legal duty of the master to the servant to use due care to provide all permanent conditions of safety for the service required, as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

distinguished from those conditions which are only immediately necessary to safety, and this is a positive duty which cannot be delegated to another.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 175, 199–202, 212, 254, 255; Dec. Dig. §§ 103, 107.*]

3. MASTER AND SERVANT (§ 270*)—MASTER'S LIABILITY FOR INJURY TO SERVANT.

Defendant was engaged in blasting a tunnel employing three classes of workmen at and near the heading: Machine men or drillers who drilled the holes in the heading and placed the shots, helpers, who assisted with their machines, and muckers, who shoveled into cars for removal the loose rock thrown out by the blasts. Each blast left rough projections and loosened pieces of rock on the sides and roof of the tunnel, and necessitated their trimming by removing such loosened rock to render it safe to proceed with the work. Plaintiff was employed as a mucker, but was sent by the foreman to act temporarily as a helper, and was injured by a piece of rock which fell from the roof. *Held*, that it was a positive duty of defendant to use reasonable care to see that the tunnel was properly trimmed to render it safe for the workmen; that in an action to recover for the injury the court should have allowed the fullest investigation of all the conditions, including the assignment of duties by defendant or its superintendent to the various employés, and that it was error to exclude evidence offered by plaintiff to show that the drillers were charged with the duty of trimming the roof, and that they alone did such work in practice.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Action at law by John Regan against the Parker-Washington Company. Judgment for defendant, and plaintiff brings error. Reversed.

B. J. Wellman, of Chicago, Ill., for plaintiff in error.

Henry R. Rathbone, of Chicago, Ill., for defendant in error.

Before BAKER and KOHLSAAT, Circuit Judges, and HUMPHREY, District Judge.

HUMPHREY, District Judge. Defendant in error was constructing a tunnel in Cregier avenue, in Chicago, and plaintiff in error was an employé in the work.

The tunnel was about 12 feet in height and was at a depth of about 75 feet below the street level. The work consisted in blasting the rock and removing the material so blasted. The top half was worked in advance of the lower half, the latter serving as a platform or shelf on which the men and machines stood in blasting the top half. This shelf was as wide as the tunnel, about 13 feet long and about 5 feet high. Three classes of men did the work: Machine men or drillers, who ran the machines to drill the holes and who placed the dynamite; helpers, who poured water for the drillers, so that the drills would not heat; and laborers, called muckers, who shoveled into cars and removed the débris caused by the blasts. Two shifts worked, one by day and one by night, and there was one blast each 24 hours by each shift. When a blast was fired, tons of rock would be hurled from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the heading, leaving the walls and roof from which it came rough, uneven, and with loose projections or bellies of stone. All such uneven or loose stones were then removed from the roof so as to make it a safe roof under which to proceed with the work. This removal of stones loosened by the blast was called "trimming" the roof.

Plaintiff in error had been working for some months on the night shift as a mucker. On the night in question, by direction of his foreman, he assisted Teddy, one of the drillers, as a helper. He admits that on one previous night he had worked as a helper, and there is evidence to the effect that he had done so on more than one previous occasion.

On the trial plaintiff in error offered evidence tending to show that it was the duty of the drillers to trim the roof and that they alone did in practice do this work, but the evidence was ruled out. We think this was error. Such evidence was competent and material, and should have been admitted. The defense is based upon assumption of risk, which would include fellow servants, and it was suggested in oral argument that even if the rejected testimony had been admitted, and had shown conclusively that it was the sole duty of the drillers to trim the roof, still there would be no liability because the drillers, helpers, and muckers would be fellow servants.

[1] The subject of fellow servants in the Supreme Court presents a varied history, and the subject of assumed risk is in most of the cases closely allied with it.

The first case arising in the Supreme Court of the United States and involving this doctrine was in 1873, Union Pacific Railroad Co. v. Fort, 84 U. S. (17 Wall.) 553, 21 L. Ed. 739, opinion by Mr. Justice Davis. A boy was employed as a helper or work hand on the floor of a shop. The machinery was in charge of one Collett, another employé whom the boy was assisting as helper at a moulding machine. Collett required the boy to go up on a ladder and adjust a belt on a rapidly revolving shaft. The boy had his arm torn off. The court held that the assumed risk covered all risks of negligence of servants in the same line of duty and within the scope of the employment; that, judged by this rule, Collett and the boy were not fellow servants because the work was not within the contract of service, and therefore the risk was not assumed by the boy, and he had no reason to believe he would have to encounter it. The court states the contention of counsel for plaintiff in error "that the master is not liable to one of his servants for injuries, resulting from the carelessness of another, when both are engaged in a common service, although the injured person was under the control and direction of the servant who caused the injury." And then goes on to say:

"Whether this proposition, as stated, be true or not, we do not propose to consider, because, if true, it has no application to this case."

Mr. Justice Bradley dissented, but wrote no opinion. The case is not important. Not an authority is cited in the opinion of the court and very little reasoning employed. In the briefest manner the court holds that the case is controlled by the fact that the service required of the boy was not within the scope of the employment.

In 1879 in Hough v. Texas & Pacific Ry. Co., 100 U. S. 213, 25 L. Ed. 612, the same doctrine was announced in an opinion by Mr. Justice Harlan; the court being unanimous. Hough was an engineer and was killed by reason of a defective cowcatcher on his engine. The injury was due to the negligence of other servants in the machinery department, to wit, a master mechanic and foreman of roundhouse. While the case was decided upon the doctrine announced in the Fort Case, Mr. Justice Harlan in the opinion discusses the authorities and reasons upon the doctrine with some elaboration. He begins with the language of Chief Justice Shaw in Farwell v. Boston & Worcester Railway Corporation, 4 Metc. (Mass.) 49, 38 Am. Dec. 339:

"The general rule resulting from considerations as well of justice as of policy is that he who engages in the employment of another for the performance of specified duties and services for compensation takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal presumption, the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master. They are perils incident to the service, and which can be as distinctly foreseen and provided for in the rate of compensation as any other."

Judge Harlan goes on to say:

"As to the general rule, very little conflict of opinion is to be found in the adjudged cases, where the court has been at liberty to consider it upon principle, uncontrolled by statutory regulations. The difficulty has been in its practical application to the special circumstances of particular cases. What are the natural and ordinary risks incident to the work in which the servant engages; what are the perils which, in legal contemplation, are presumed to be adjusted in the stipulated compensation; who, within the true sense of the rule, or upon grounds of public policy, are to be deemed fellow servants in the same common adventure or undertaking—are questions in reference to which much contrariety of opinion exists in the courts of the several states."

He then cites Ford v. Fitchburg Railroad Co., 110 Mass. 241, 14 Am. Rep. 598, and Wharton on the Law of Negligence, § 211, holding that, where the master does not supply the servant with safe machinery, he will be liable, although the neglect to furnish such safe machinery be the negligence of other servants in the master's employ.

Another authority cited is Priestley v. Fowler, 3 Mee. & W. p. 1. This was a case in which one servant was transporting goods of the master in a van, conducted by another servant of the same master. The master defended on the ground that the plaintiff knew as well as himself and probably better whether the van was sufficient, whether it was overloaded, and whether it was likely to carry him safely, but Lord Abinger held that the master is bound to provide for the safety of the servants in the course of his employment, to the best of his judgment, information, and belief.

Other English cases based upon the decision in Priestley v. Fowler are cited to the same effect.

We cite these two cases because they are the first two which came before the court. Both are decided upon the idea that the risk of the servant is assumed, or not assumed, according to the "scope of the

contract of employment," and this phrase is used by the learned judges in both cases. Strange to say, we hear no more of it. We are not able to find a case in which any reference is ever made again to that phrase "the scope of the contract of employment." The court seems to have abandoned it forever. In neither of these cases did the court decide who are fellow-servants within the rule.

In the cases of Packet Co. v. McCue, 17 Wall. 508, 21 L. Ed. 705, and Wabash v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605, the master was held liable either for providing an unsafe engine or in employing unfit servants.

In the case of Randall v. Baltimore & Ohio R. R. Co., 109 U. S. 482, 3 Sup. Ct. 325, 27 L. Ed. 1003, the court, through Mr. Justice Gray, say:

"The general rule of law is now firmly established that one who enters the service of another takes upon himself the ordinary risks of the negligent acts of his fellow servants in the course of employment."

But this case, like all those which preceded it, is decided without defining who are fellow servants, and the decisions heretofore referred to based upon the "scope of the employment" as a rule of decision cannot be said to have ever given that rule any important place in the mind of the court.

In 1884, the court announced its first decision in which it undertook to define who are fellow servants; and without the slightest reference to the former doctrine, based upon the scope of the contract of employment, it adopted a new and entirely different test, to wit, the relation in business of the negligent employé and the plaintiff. The case is known by all lawyers as the leading one. C., M. & St. P. R. R. Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787. The opinion is by Mr. Justice Field. Ross was an engineer of a freight train, and was injured through the negligence of the conductor in not showing his special orders before leaving the station where the orders were received. Mr. Justice Field writes an elaborate opinion citing the early English cases. He first announces the general doctrine that a servant engaged for the performance of specific services takes upon himself the ordinary risks incident thereto:

"As a consequence, if he suffers by exposure to them, he cannot recover compensation from his employer. The obvious reason for this exemption is that he has, or in law is supposed to have, them in contemplation when he engages in the service, and that his compensation is arranged accordingly. He cannot, in reason, complain if he suffers from a risk which he has voluntarily assumed, and for the assumption of which he is paid. * * * And it has been held in numerous cases, both in this country and in England, that there is implied in his contract of service in such cases that he takes upon himself risks arising from the negligence of his fellow servants, while in the same employment, provided always the master is not negligent in their selection or retention, or in furnishing adequate materials and means for the work; and that, if injuries then befall him from such negligence, the master is not liable. The doctrine was first announced in this country by the Supreme Court of South Carolina in 1841 in Murray v. S. C. Railroad Co., 1 McMul. 385 [36 Am. Dec. 268], and was affirmed by the Supreme Court of Massachusetts the following year in Farwell v. Boston [4 Metc. (Mass.) 49, 38 Am. Dec. 339], and Worcester Railroad Co. [4 Metc. (Mass.) 564]. In the South Carolina case a fireman, whilst in the employ of the company, was

injured by the negligence of an engineer also in its employ, and it was held that the company was not liable, the court observing that the engineer no more represented the company than the fireman; that each in his separate department represented his principal; that the regular movement of the train of cars to its destination was the result of the ordinary performance by each of his several duties, and that it seemed to be on the part of the several agents a joint undertaking where each one stipulated for the performance of his several part; that they were not liable to the company for the conduct of each other, nor was the company liable to one for the conduct of another; and that as a general rule, when there was no fault in the owner, he was only liable to his servants for wages."

He then quotes extensively from the Massachusetts case, to which we have already alluded (opinion by Justice Shaw), and which he says has exerted great influence in the course of decisions in this country, and goes on to say:

"The doctrine of the master's exemption from liability was first distinctly announced in England in 1850 by the Court of Exchequer in Hutchinson v. York, Newcastle & Berwick Railway Co., 5 Exch. R. 343."

He argues that Priestley v. Fowler, an English case decided in 1837, is not in point, because it does not directly involve the question as to the liability of a master to a servant for the negligence of a fellow servant. At any rate, Justice Field regards the Hutchinson Case as the first one where the doctrine was applied to railway service.

"There it appeared that a servant of the company, who, in the discharge of his duty, was riding on one of its trains, was injured by a collision with another train of the same company, from which his death ensued, and it was held that his representatives could not recover, as he was a fellow servant with those who caused the injury; and the court said that whether the death resulted from the mismanagement of the one train or the other, or of both, did not affect the principle. The rule was applied at the same time by that court to exempt a master builder from liability for the death of a bricklayer in his employ caused by a defective construction of a scaffolding by his other workmen, by reason of which it broke and the bricklayer at work upon it was thrown to the ground and killed. Wigmore v. Jay, 5 Exch. 354."

The court concludes that the question in all cases is: What is essential to render the service in which different persons are engaged a common employment? Bartonshill Coal Co. v. Reid, and the Same Company v. McGuire, 3d Macqueen H. L. Cas. 266, 300, are cited. This was where the injured parties were coal miners, and the servant whose negligence caused the injury was running the engine by which they were let down into the mine and brought out, and the coal which they dug was raised. Held, that they were engaged in a common work, that of getting coal from the pit. Lord Chancellor Chelmsford, who delivered the opinion in the McGuire Case, said:

"Where servants, therefore, are engaged in different departments of duty, an injury committed by one servant upon another by carelessness or negligence in the course of his peculiar work is not within the exemption, and the master's liability attaches in that case in the same manner as if the injured servants stood in no such relation to him."

And in the same case Lord Brougham said:

"To bring the case within the exemption there must be this most material qualification, that the two servants must be men in the same common employment, and engaged in the same common work under that common employment."

He also cites Wilson v. Merry, L. R. 1 H. L. Sc. 326, decided by the House of Lords in 1868, holding:

"The master was not liable to his servant unless there was negligence on the master's part in that which he had contracted with. the servant to do, and that the master, if not personally superintending the work, was only bound to select proper and competent persons to do so, and furnish them with adequate material and resources for the work; that, when he had done this, he had done all that he was required to do, and, if the persons thus selected were guilty of negligence, it was not his negligence, and he was not responsible for the consequences."

After considering all these authorities with much greater elaboration than we have undertaken to indicate, Justice Field says:

"There is, in our judgment, a clear distinction to be made in their relation to their common principal between servants of a corporation. exercising no supervision over others engaged with them in the same employment, and agents of the corporation, clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence. A conductor, having the entire control and management of a railway train, occupies a very different position from the brakeman, the porters, and other subordinates employed. He is in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. * * * He directs when the train shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements, and all persons employed on it are subject to his orders. In no proper sense of the terms is he a fellow servant with the fireman, the brakeman, the porters, and the engineer. The latter are fellow servants in the running of the train under his direction; as to them and the train, he stands in the place of and represents the corporation."

Here was a bold, clear, explicit rule capable of being easily understood and followed as to who are fellow servants, and the basis of the rule so announced was *"the relation in business of the negligent servant to the injured servant."* But unfortunately the decision is by a bare majority of the court. Those holding with the majority were Justices Field, Waite, Harlan, Miller, and Woods; dissenting Justices Bradley, Matthews, Gray, and Blatchford.

One other case, Northern Pacific v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755, decided in 1885, was decided by the same alignment of justices. In the Herbert Case it was held that a person assigned to the duty of keeping cars and appliances in good order represents the master, and is not a fellow servant with a brakeman injured by reason of a defective brake. This decision is also by Mr. Justice Field, and the division of judges is the same as in the Ross Case. In this case the court say:

"To provide machinery and keep it in repair, and to use it for the purpose for which it was intended, are very distinct matters. They are not employments in the same common business, tending to the same common result. The one can properly be said to begin only when the other ends. The two persons may, indeed, work under the same master and receive their pay from the same source; but this is not sufficient. They must be at the same time engaged in a common purpose or employed in the same general business."

Justice Blatchford on behalf of the dissenting justices wrote an opinion; but, as the discussion in the dissenting opinion is wholly up-

on the effect of a North Dakota statute, there is nothing in it to indicate the broad chasm dividing the two sides of the court as it appeared in subsequent cases.

Thus divided the court stood for a number of years, five holding for the liability of the master and four exempting the master from liability and all so far as the opinions show solely upon the relation in business between the negligent servant and the injured servant.

In 1886 arose the case of Cunard Co. v. Carey, 119 U. S. 245, 7 Sup. Ct. 1360, 30 L. Ed. 354. This was where a longshoreman in employ of the steamship company was injured by a tub which fell through the insufficiency of the rope to which it was attached and after notice of such insufficiency had been given to the company's agent. Justice Woods was absent; the remainder of the court divided as in the Ross and Herbert Cases, Justices Field, Waite, Harlan, and Miller for the liability of the master, and Justices Bradley, Matthews, Gray, and Blatchford against such liability.

In the same year C. & N. W. Ry. Co. v. McLaughlin, 119 U. S. 566, 7 Sup. Ct. 1366, 30 L. Ed. 477. In this case a car repairer, working on a ladder which rested against a car, was injured by reason of his car being struck by a switch engine. Justice Woods, still being absent, the court divided evenly as in the Ross and Herbert Cases.

In 1893, in the case of Baltimore & Ohio R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, a majority of the court announced a new rule, or, as the opinion itself recites, a new statement of the rule governing the liability of the master for the injury done to one servant through the negligence of another. An engine was running without any train attached. A rule of the company required that in such cases the engineer should act as conductor. Baugh, the fireman, was injured through the negligence of the engineer in handling his engine. It was contended by counsel for defendant in error that the Ross Case was controlling. The court had held in the Ross Case that the conductor of a train represents the company, and is not a fellow servant with his subordinates on the train. The rule of the company provided that, when there is no conductor, the engineer should be regarded as conductor. Therefore, in such case, the engineer represents the company and is likewise not a fellow servant with his subordinates, but the court held in the Baugh Case that the fireman and engineer are fellow servants. The opinion is by Mr. Justice Brewer and occupies 40 pages. The case arose in Ohio and defendant in error contended that the decisions of the Supreme Court of Ohio controlled the case. The court held that it was not a question of local law to be settled by the decisions of the Supreme Court of the state in which the cause arose, but one of general law to be determined by reference to all the authorities, and a consideration of the principles underlying the relations of master and servant. The first eight pages are given to a discussion of the authorities on this question and is one of the best authorities in the books on that subject.

Passing to the main question in the case, the liability or nonliability of the master for the injury to the fireman by the negligence of the engineer, the learned judge concludes that in the Ross Case the court

"did not hold that it was universally true that, when one servant has control over another, they cease to be fellow servants within the rule of the master's exemption from liability, but did hold that an instruction couched in such general language was not erroneous when applied to the case of a conductor having exclusive control of a train in relation to other employés of the company acting under him on the same train."

The argument is that the court in the Ross Case did not intend to decide and did not decide that the relation to the business between the negligent servant and the injured servant was the controlling test. The further argument is that the court did not decide in the Fort Case that the test was the fact as to whether or not the risk was an obvious one, and then proceeds:

"What test or rule is there which determines? Rightfully this, there must be some personal wrong on the part of the master, some breach of positive duty on his part. If he discharges all that may be called positive duty, and is himself guilty of no neglect, it would seem as though he was absolved from all responsibility, and that the party who caused the injury should be himself alone responsible. It may be said that this is only passing from one difficulty to another, as it leaves still to be settled what is positive duty and what is personal neglect; and yet, if we analyze these matters a little, there will appear less difficulty in the question. Obviously, a breach of positive duty is personal neglect; and the question in any given case is therefore, What is the positive duty of the master? He certainly owes the duty of taking fair and reasonable precautions to surround his employé with fit and careful coworkers, and the employé has a right to rely upon his discharge of this duty. If the master is careless in the matter of employing a servant, it is his personal neglect; and if without proper care in inquiring as to his competency he does employ an incompetent person, the fact that he has an incompetent, and therefore an improper, employé, is a matter of his personal wrong, and owing to his personal neglect. And, if the negligence of this incompetent servant works injury to a coservant, is it not obvious that the master's omission of duty enters directly and properly into the question of responsibility? * * * Again, a master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary."

The gist of the whole decision is stated in the following language:

"Therefore it will be seen that the question turns rather on *the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master.* * * * This court recognized the master's obligation to provide reasonably suitable place and machinery, and that a failure to discharge this duty exposed him to liability for injury caused thereby to the servant, and that it was immaterial how or by whom the master discharged that duty. The liability was not made to depend in any manner upon the grade of service of a coemployé, but upon the character of the act itself, and a breach of the positive obligation of the master. * * * It may safely be said that this court has never recognized the proposition that the mere control of one servant over another in doing a particular piece of work destroys the relation of fellow servants, and puts an end to the master's liability. On the contrary, all the cases proceed on the ground of some breach of positive duty resting upon the master, or upon the idea of superintendence or control of a department."

The Hough Case, the Herbert Case, the Fort Case, the Randall Case, and Steamship Co. v. Merchant. 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656, are all quoted in support of this doctrine. Yet the language of the rule here announced had not been previously stated, and the profession generally had regarded the prior cases as recognizing a doctrine making the test depend upon the relation in business between the two servants.

The Baugh Case distinguishes the Ross Case, and by many is regarded as going far to overrule it. The division of judges here was Justices Brewer, Blatchford, Gray. Brown, Shiras, and Jackson against the liability of the master. with Justices Field and Fuller dissenting. Justice Harlan was in Europe in the Behring Sea fur seal matter at the time. Justice Field wrote an elaborate dissenting opinion in support of the contention that the Supreme Court of the United States was bound by the decisions of the Supreme Court of Ohio. He also reviews briefly the decision in the Ross Case, and regrets the tendency of the majority of the court in favor of the largest exemptions of corporations from liability, holding that the Ross decision is in accordance with justice and humanity to the servants of a corporation. In the Baugh Case the court refused to approve an instruction in substantially the same terms as the instruction approved in the Ross Case.

In the same year was decided the case of Northern Pacific v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009. In this case a laborer on the section was held to be a fellow servant with an engineer and conductor of a passenger train on the same road. The decision is by Mr. Justice Brown. With him were Justices Jackson, White, Shiras, Gray, and Brewer; dissenting, Justices Fuller, Field, and Harlan. The court admits that, while the cases involving the question of fellow servant have not been numerous, the decisions have not been altogether. harmonious. All are briefly discussed, and the decision is based upon the fact that the two employés are in the same department of service. This term "department of service" had been used several times before, and the use of this term had led to the contention by many good lawyers that the real test as to liability is whether or not the two employés are in the same department of service. We do not think the Supreme Court means to be so understood.

In 1895 was decided the case of Central Railroad Co. v. Keegan, 160 U. S. 259, 16 Sup. Ct. 269, 40 L. Ed. 418. In this case it was held that a brakeman is a fellow servant with the foreman of his crew of five men. The opinion is by Mr. Justice White, and the decision is based upon that in the Baugh Case. The court say that the heads of separate and distinct departments of a diversified business may, under certain circumstances, be considered, with respect to employés under them, vice principals or representatives of the master, as fully and as completely as if the entire business of the master was by him placed under the charge of one superintendent, but he says that each separate piece of work was not a distinct department, and did not make the one having control of that piece of work a vice principal or representative of the master, and holding that the brakeman and his

foreman were working together in the same department, thus giving some basis for the contention now frequently made that the test is whether the two employés are in the same or in different departments. With Justice White were Justices Brown, Jackson, Shiras, Gray, and Brewer; dissenting, Chief Justice Fuller and Justices Field and Harlan.

In 1896 was decided the case of Northern Pacific v. Peterson, 162 U. S. 351, 16 Sup. Ct. 843, 40 L. Ed. 994. Peterson was a member of a gang of 13 laborers working under the direction of Holverson, foreman, who had full power to employ, discharge, and direct. Peterson was in all matters relating to his duty as laborer subject to the authority of Holverson, and was injured by the negligence of Holverson. The court, speaking through Mr. Justice Peckham, hold the laborer and his foreman to be fellow servants. They base the ruling upon the Baugh Case, and say:

"In the Baugh Case it is also made plain that the master's responsibility for the negligence of a servant is not founded upon the fact that the servant guilty of the neglect had control over and a superior position to that occupied by the servant who was injured by his negligence. The rule is that, in order to form an exception to the general law of nonliability, the person whose neglect caused the injury must be 'one who was clothed with the control and management of a distinct department, and not a mere separate piece of work in one of the branches of service in a department.' This distinction is a plain one, and not subject to any great embarrassment in determining the fact in any particular case."

With the majority were Justices Peckham, Brown, White, Shiras, Gray, and Brewer; dissenting, Chief Justice Fuller and Justices Field and Harlan. In this decision the court with the concurrence of Justice Brewer gives much more importance and prominence to the idea of distinct department of service than Justice Brewer himself gave when he used that phrase in the Baugh Case. Whoever reads the Baugh Case attentively cannot fail to see that the controlling idea on which that decision rests is the character of the act about which the negligence occurred; and yet, in the Peterson Case, the court adopt the idea that the separate department of work must have controlling effect.

We have already said that in the Baugh Case the profession had generally regarded that the court had gone far toward overruling its opinion in the Ross Case. It remained for the court in 1899 in New England R. R. Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181, to distinctly overrule the Ross Case. Indeed the court say in the Conroy opinion that the decision in the Baugh Case did, in effect, if not in terms, overrule the Ross Case. The Conroy Case was where a brakeman on a freight train was killed through the negligence of his conductor and the court hold that they are fellow servants. Mr. Justice Shiras, delivers the opinion, and Justice Harlan alone dissents. Heretofore the Chief Justice had stood with Justice Harlan on all questions as to the liability or nonliability of the master in this class of cases, and had himself written dissenting opinions.

In N. Pac. Ry. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006, the court held a local telegraph operator to be a fellow servant of the train crew.

In Santa Fé Pac. v. Holmes, 202 U. S. 438, 26 Sup. Ct. 676, 50 L. Ed. 1094, a train dispatcher was held not to be a fellow servant of an engineer injured by the negligence of the dispatcher.

In McCabe Co. v. Wilson, 209 U. S. 275, 28 Sup. Ct. 558, 52 L. Ed. 788, a superintendent of a construction gang was held not to be a fellow servant of an engineer.

In Texas & Pac. Ry. Co. v. Bourman, 212 U. S. 536, 29 Sup. Ct. 319, 53 L. Ed. 641, a section hand was held to be a fellow servant of an engineer and of his foreman.

In Beutler v. Grand Trunk Ry. Co., 224 U. S. 85, 32 Sup. Ct. 402, 56 L. Ed. 679, a worker in repair yards is held to be a fellow servant of a crew running an engine into the yard for repairs.

We do not cite all the cases, but those containing the more significant utterances of the court.

Now what deductions are to be made from these cases? Are the cases themselves reconcilable? Where does the court now stand on the question? With what exactness has the court defined who are fellow servants? And what formula, if any, has the court announced as a guide to the profession?

We are of opinion that the test to which the court brings us, and the one by which most, if not all, of the cases can be reconciled, is *"the character of the act in respect to which the negligence occurs."*

If the master is guilty of the breach of a legal duty, then he is liable, regardless of whether the breach was worked by one servant or another. A study of the opinions will show that the various phrases, assumed risk, scope of employment, different department of service, relation in business of the two employés, and whether the risk is or is not obvious, have all given place to the nature of the act about which the negligence occurs; whether there has been a breach of some positive duty of the master. If there has, then the master is liable, no matter what servant by his negligence caused that breach. The strongest statement of this rule is by Justice Brewer in the Baugh Case.

[2] He considers and puts aside all test phrases previously used by the court, and approaches the subject from the viewpoint of the master's legal duty, at the same time admitting that this may only be passing from one difficulty to another, as this leaves still to be settled what is the positive duty of the master. There is no formula describing the legal duty of the master.

Perhaps the one now most frequently used is that formulated by Justice Brewer in the Baugh Case that it is the employer's duty to use due care to furnish reasonably safe appliances and a reasonably safe place to work. This is excellent as far as it goes; and, while more nearly adequate than any other expression of the court in defining the legal duty of the employer, this like all those previously used, is found to be insufficient as a final test for all the cases that arise. It is, however, proper to say that since Justice Brewer wrote

in the Baugh Case the opinions of the court have tended to the idea that the controlling feature is the nature of the act about which the negligence arose.

The court itself never regarded this as a complete description of the employer's duty because between the Ross Case and the Baugh Case, three cases were affirmed by a divided court, four on each side:

(a) The Cunard Case, where the coal tub fell by reason of a worn-out rope.

(b) The McLaughlin Case, where a car repairer was backed into by a switch engine.

(c) The Price Case, 145 U. S. 651, 12 Sup. Ct. 986, 36 L. Ed. 843, where an engineer was injured by the failure of a telegraph operator to deliver a message from the train dispatcher.

The court adopts the safe place and safe appliance test, but it is evident they do not think it fully describes the duty which the employer owes to his servant. If they had, they would not have disagreed on these three cases. They must have disagreed as to the application of the test. If so, you may say the test is all right, but the scope of its application must be left to the jury. Surely, if the formula is legally adequate, its scope may well be left to the jury when eight judges divide equally on it. But the formula is not adequate. Two cases in the 166 U. S. show this. They are Martin v. A. T. & Santa Fé, 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051, and Texas & Pacific v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136.

In the Santa Fé Case, Martin, a section hand on a hand car, was hurt because the foreman failed to keep a lookout for a train following. The court held there was no liability.

In the other case, Barrett was foreman of a switch engine in the yards, and was hurt by the explosion of a locomotive boiler. There was evidence that the boiler was defective, and a proper inspection would have discovered the fact. The trial court refused to instruct that:

"If the defendant originally provided a reasonably safe engine and used reasonable care to employ a competent inspector to keep said engine in repair and used reasonable care to see that said inspector performed his duty, the defendant was not liable."

The Supreme Court affirmed a judgment for the plaintiff.

What is the difference between these two cases so far as the safe place test is concerned? In both cases the place was safe enough to begin with and only became unsafe through the negligence of another servant. Yet in one case judgment for the plaintiff is reversed and in the other affirmed.

Look also at Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464, where a mine engineer was hurt by the explosion of powder negligently left in the engine house by orders of a coemployé. A judgment for the plaintiff was affirmed. While in the Conroy Case a brakeman on the front section of a broken train was killed by collision with the rear section because of the negligence of the conductor in not having brakemen stationed at proper places on both sec-

tions, and the court held there was no liability. Here again in both cases the place of the accident was safe enough to begin with and only became unsafe because of the negligence of a coemployé.

Many analyses of these decisions have been made by eminent judges and other members of the profession, none of which seem to be in all respects adequate.

A rule which would reconcile nearly all the decisions of the Supreme Court may be stated as follows:

It is the legal duty of the master to the servant to use due care to provide all permanent conditions of safety for the service required. We distinguish between permanent conditions of safety and those which are only incidentally necessary to safety. As to the former, the duty of the master is positive, and cannot be delegated to another. Let the two cases in the 166 U. S. illustrate the two conditions. The one on page 617, of 166 U. S., on page 603 of 17 Sup. Ct., 41 L. Ed. 1051, was a boiler explosion; the other, on page 399, of 166 U. S., on page 707 of 17 Sup. Ct., 41 L. Ed. 1136, was where the foreman on a hand car failed to keep a lookout. Safe boilers are a condition of permanent safety. The master must, by regular inspection, see that they are kept safe. It was necessary to safety that the foreman on the hand car keep a lookout for approaching trains, but this duty was only incidentally necessary to safety.

The decisions of the Supreme Court will generally divide on this line. The following are cases where it was held that the master was not liable: Randall v. B. & O., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003, an engineer ran too fast in making a switch and injured a switchman. Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440, plaintiff stepped upon the end of an unsupported beam on a building being constructed. Coyne v. Union Pacific, 133 U. S. 370, 10 Sup. Ct. 382, 33 L. Ed. 651, a careless instruction caused injury from lifting a rail. Quebec Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656, ship's carpenter failed to fasten a gangway rail. Northern Pacific v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009, plaintiff working on a culvert injured by negligence of engineer. The list can be doubled and trebled—all cases where the condition was only incidentally necessary to safety.

On the other hand, the cases where judgment for the plaintiff was sustained, or it is held that the case should have gone to the jury, are cases where the act was with reference to a permanent condition of safety: Hough v. Texas, 100 U. S. 213, 25 L. Ed. 612; Northern Pacific v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755; Kane v. N. Central, 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; Georgetown v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; San Francisco Co. v. Schumacher, 152 U. S. 77, 14 Sup. Ct. 479, 38 L. Ed. 361; N. Pacific v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958; Texas & Pacific v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Gardner v. M. C. R. R. Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; U. P. Ry. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; Wabash v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605; B. & O. v. Baugh, 149 U. S. 368,

13 Sup. Ct. 914, 37 L. Ed. 772; Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464.

In Steamship v. Carey, 119 U. S. 245, 7 Sup. Ct. 1360, 30 L. Ed. 354, and C. & N. W. v. McLaughlin, 119 U. S. 566, 7 Sup. Ct. 1366, 30 L. Ed. 477, the court was evenly divided. In these cases it is difficult to say whether the act in question pertained to a condition of permanent safety or a condition which was only incidentally necessary to safety—an excellent reason why the judges were not at agreement. Even the Ross Case can be upheld if it be considered that the act there was with respect to a permanent condition of safety.

[3] Now, in the case we are considering, we hold that the roof of the tunnel was a condition of permanent safety, and it was a positive duty of the master to use reasonable care to keep it safe for men to work under. For an act of negligence by a fellow servant with respect to this roof the master is liable, and the only servant to whom he would not be liable is that servant to whom is assigned the duty of keeping the roof safe. But it is contended by defendant in error that the changing of conditions of the working place form such an exception to the "safe place" rule as to entirely relieve the defendant company of any liability. So strongly is this argued and so varied the form in which it is stated that defendant's contention, as we understand it, may be broadly summoned up by saying that in dangerous construction work, where the character of the working place is constantly changing as to safety or danger as the work progresses, all the master has to do is to give warning of the danger and leave the workmen to look out for their own safety; and, if an injury occurs, deny liability on the ground that the changing conditions occasioned by the work puts all the risk on the servant.

We cannot accept this view. In all constructive work the master is the controlling mind. He must do that which reasonable prudence would suggest as safe and proper to advance the work without danger to the workmen. If such reasonable prudence require a strict organization of the crew, the separation of the work into parts, the selection and instruction of men with reference to each part, the special instruction of new or inexperienced men, and the assignment of duties with reference to training and capacity, then the master must do these things. This is not saying that the master must follow up the servant and see that his place is safe at every moment of the work, yet the argument of defendant in error and the cases cited by it in support thereof all go in refutation of so strict a rule.

The work here was extra hazardous. The chief danger was at the heading. The sides and roof were tested and trimmed as the work progressed. The whole scheme contemplated that this testing and trimming would continue until it would leave the roof in a safe condition. The duties of plaintiff in error required him to shovel the loose and shattered stone beginning back as far as any such stone was found and working toward the heading. Occasionally his work brought him up close to the heading. If he had any further duties, and particularly what duty, if any, he had to assist in testing or trimming, the record does not make clear. The trial court excluded such evidence and

seems to have proceeded on the theory that, as the work was hazardous and conditions of safety were constantly changing, all members of the crew were held to have assumed the risk of dangers incidental to any part thereof. The court should have allowed the fullest investigation of all the conditions—just how the work was carried on in fact and with the knowledge of the superintendent, the assignment of duties to the various servants, the instructions with regard thereto and how in customary practice such directions were observed or not observed. In no other way could court or jury determine whether plaintiff in error had, or by reasonable use of his natural senses might have had, such knowledge of the conditions surrounding him as to apprehend and appreciate the dangers of the place and to have assumed the risk arising therefrom. Conditions are often deceptive, and a workman not charged with the duty of controlling conditions has a right to assume that the master in the exercise of a reasonable prudence will save him from dangers not clearly obvious and which may belong to other parts of the work.

We have examined fully the authorities cited on behalf of defendant in error and think them not inconsistent with this view.

Reversed, with directions to proceed in accordance with the view herein expressed.